IN THE UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF TENNESSEE
COLUMBIA DIVISION

FILED
2010 DEC 20 PM 3:50
U.S. DISTRICT COURT
MIDDLE DISTRICT OF TN

DYLAN J. TREVINO, A Minor, Suing )
by his Next Friend and Guardian, DIANA )
TREVINO, and DIANA TREVINO, )
Individually, )
           )   1 10   0115
     Plaintiffs, )
           )
  vs.          )   CIVIL ACTION NO.: _____
           )   JURY DEMAND
BLITZ U.S.A., INC.,       )
     Defendant. )

## COMPLAINT FOR DAMAGES

COMES NOW Plaintiffs, DYLAN J. TREVINO, A Minor, Suing by his Next Friend and Guardian, DIANA TREVINO and DIANA TREVINO, Individually, and for complaint against Blitz, U.S.A., Inc. would show the Court as follows:

### PARTIES

1. Plaintiffs Dylan J. Trevino and Diana Trevino are citizens and residents of the state of Tennessee, County of Maury, residing at 1990 Lasea Court, Spring Hill, Tennessee 37174.

2. Defendant Blitz, U.S.A., Inc. ("Blitz") designed, manufactured, produced and sold the subject portable plastic gasoline container. Blitz is the largest manufacturer of plastic gas cans in the United States. Blitz is a foreign corporation that maintains its primary offices in the state of Oklahoma and does business in the state of Tennessee and can be

served with process by serving its registered agent: C.T. Corporation System, 800 S. Gay Street, Suite 2021, Knoxville, Tennessee 37929-9710.

## VENUE AND JURISDICTION

3. Subject matter jurisdiction is proper under 28 U.S.C. § 1332 in that diversity of citizenship exists between Plaintiffs and Defendant and the amount in controversy as to Plaintiffs and as to Defendant exceeds, exclusive of costs and interest, the sum of Seventy-Five Thousand and No/100 Dollars ($75,000.00).

4. Plaintiffs are citizens of Maury County, Tennessee.

5. Defendant Blitz is an Oklahoma corporation whose principal place of business is in Oklahoma.

6. The incident, which is the subject of this complaint, occurred at 1990 Lasea Court, Spring Hill, Tennessee 37174.

## FACTS

7. The morning of December 23, 2009, five-year old Dylan J. Trevino sustained horrible injuries when the gasoline container he was holding exploded and covered him with flaming gasoline. On that morning, Dylan J. Trevino sought to reignite the coals of the fire around which his family had gathered and sang Christmas songs the night before. Unable to rekindle the fire with leaves alone, Dylan J. Trevino retrieved a Blitz Model 50810 two-gallon, eight ounce gasoline container by climbing up to a top shelf where the container was stored out of his reach. As Dylan J. Trevino tilted the Blitz Model 50810 – containing a

2

small amount of gasoline – towards the fire, the can exploded and inundated Dylan J. Trevino with flames. Both a neighbor and Dylan J. Trevino's older brother heard the explosion. The neighbor and brother got to Dylan and extinguished the flames on Dylan J. Trevino. Emergency personnel arrived and transported Dylan J. Trevino to the University of Vanderbilt Medical Center. From there, Dylan J. Trevino went to the Shriner's Burn Center in Cincinnati, Ohio.

8. Dylan J. Trevino suffered catastrophic burns over 65% of his body. As a direct and proximate cause of Defendant Blitz's acts and omissions, he has permanent physical scars from the burning. Due to the burns, he lost all of the fingers on his right hand. Additionally, he also lost all but one centimeter of his small intestine. Dylan J. Trevino now eats through a feeding tube and will never be able to eat solid foods again. Dylan J. Trevino has suffered permanent physical and emotional injuries that will require medical treatment for the rest of his life.

9. Defendant Blitz's acts and omissions in designing, formulating, producing, constructing, creating, assembling, testing, manufacturing, engineering, marketing, and selling the Model 50810 portable plastic gasoline container directly and proximately caused unimaginable pain and suffering for Dylan J. Trevino, both now and for the rest of his life. Further, Dylan J. Trevino is now subject to severe physical disabilities, horrible scarring, disfigurement, and emotional distress. As a result of these injuries, Dylan J. Trevino has suffered a loss of earning capacity and has incurred past medical and other related expenses. Dylan J. Trevino's injuries are permanent. Blitz, through its acts and omissions, has

3

Case 1:10-cv-00115    Document 1    Filed 12/20/10    Page 3 of 20 PageID #: 3

irrevocably diminished Dylan J. Trevino's capacity to carry out normal activities and enjoy many of the basics of life.

## COUNT I
### (Strict Liability in Tort-Design Defect)

10. Plaintiffs adopt the allegations of paragraphs 1 – 9 above and incorporate the same where relevant.

11. Defendant Blitz designed, developed, produced, created, molded, made, constructed, assembled, marketed, sold, and placed into the stream of commerce the portable gasoline container that caused Dylan J. Trevino's injuries.

12. The portable gasoline container was in a defective condition, unreasonably dangerous, and unsafe for normal and reasonably anticipated use. The container did not include a flame-arrester device, which is a necessary safety device. A flame arrester – sometimes referred to as a explosion suppression device, a flash arrester, or spark arrester – prevents combustible vapor mixtures inside a container from exploding by absorbing and dissipating heat, keeping the internal temperature below the explosion flashpoint.

13. The most common type of flame arrestor is a piece of metal placed in each opening of a container. It can be either, a perforated metal disc or cylindrical basket, or a woven metal mesh screen, either flat or cylindrical shaped. This prevents the "flashback" of flames into the can. A flashback is where vapors outside of the gasoline container ignite, the flame follows the vapor trail back into the container like a fuse to a bomb, and the vapors inside the container then ignite and explode. A flame arrestor placed in the opening of the

4

container quenches the flame before it can reach the contents of the container, preventing the container from exploding.

14. Another type of flame arrestor is often referred to as "explosion suppression material." Explosion suppression materials are usually expanded metal balls or bats that look like long, thin strips of aluminum foil woven together in a "rubber-band-ball" fashion. Instead of being placed in the opening of the container, these materials are placed inside the container. The materials absorb and dissipate heat to prevent ignition inside the container, and the result is that the container will not explode when it experiences a flashback.

15. Over 200 years ago, mining lamps used flame arrestor screens to prevent the flame from the lamp from igniting combustible vapors in the mine and causing an explosion. The efficacy of flame arresters has been known to the manufacturing industry since the early 1970's, and particularly to the manufacturers of portable metal and plastic gasoline containers. They were first put into safety cans in the 1950's, into consumer metal gasoline containers in 1978 and consumer plastic containers in 1988.

16. Prior to the injuries sustained by Dylan J. Trevino, Defendant Blitz had known or should have known for years that its gasoline containers were susceptible to flashback, i.e., the gasoline vapors ignite and follow the vapor trail back into the can causing the can to explode and/or spew flames and burning gasoline.

17. In this case, the portable gasoline container exploded and unexpectedly sprayed burning gasoline onto Dylan J. Trevino causing him grievous injuries. Had the gasoline container included the flame arrester, this injury would not have occurred. Defendant Blitz

has made, and continues to make, a conscious decision to disregard the safety of its consumers in general, and of children in particular, by not including this well-known and inexpensive safety device in its product.

18. At the time that this product left Defendant Blitz and at all times, complained of, practical, economical and technically feasible alternative designs were and still are available as described in paragraphs 13 and 14 above. These alternative designs would have prevented this incident and the injuries suffered by the Plaintiffs without substantially impairing the usefulness or intended purpose of the product.

19. The nature and magnitude of the foreseeable risks involved with the use of Blitz's gasoline containers far exceed any benefits associated with its design. Therefore, a reasonable product manufacturer would not put the Blitz gasoline containers on the market if it knew of the dangerous condition posed by flashback explosions in the absence of a flame arrestor. Blitz not only knew about the danger of flashback explosions in the absence of flame arrestors, but Blitz also consciously and recklessly disregarded that risk in the design and marketing of its gasoline containers.

20. Consumers and users were not and are not likely to possess general knowledge of the magnitude of the risks associated with using gasoline containers as designed, nor could they appreciate such risks. As such, Blitz's portable plastic consumer gasoline containers are dangerous to an extent beyond which is contemplated by a normal consumer. On the other hand, Defendant Blitz does know and is certainly in the best position to know that its gasoline containers as designed, pose tremendous and horrific risks to consumers.

6

21. The portable gasoline container designed, manufactured, marketed, sold, and distributed by Defendant Blitz was defective and unreasonably dangerous to users and bystanders, in that Defendant committed the following acts and/or omissions, which is not an exhaustive list:

A. Failed to use due care in the design, manufacture, and distribution of the subject portable gasoline container;

B. Failed to provide a reasonably safe gasoline container;

C. Failed to provide a reasonably safe design in the construction and manufacture of the portable gasoline container;

D. Failed to provide adequate safeguards to ensure safe use of the product;

E. Designed, manufactured, sold, and distributed a gasoline container which malfunctioned;

F. Failed to guard against hidden or latent defects;

G. Failed to guard against flashback in the product design;

H. Failed to include a flame arrester in the product design;

I. Failed to include explosion suppression material in the product design;

J. Failed to include an explosion suppression system in the product design;

K. Failed to actively seek information and maintain a library and/or computer data base documenting incidents in which consumers, users, and bystanders are injured and killed when encountering such portable gasoline containers;

L. Failed to actively seek information and maintain a library or data base documenting incidents involving explosion and/or internal combustion of portable gasoline containers;

M. Failed to warn the consumer or user of the conditions which must exist in order for a container to explode;

N. Failed to properly or adequately test its portable gasoline containers and prototypes thereof with flame arresters and/or explosion suppression materials;

O. Failed to protect foreseeable users of the portable gasoline container from the dangers present in the use of the container, that it knew or should have known existed;

P. Failed to give adequate notice to consumers and users of the concealed danger, namely that gasoline vapors outside the container, when exposed to an ignition source, can ignite and that the ensuing flames can travel back inside the container causing internal combustion and explosion;

Q. Failed to provide post-sale warnings after learning, knowing, or having reason to know of the defects existing in the product that rendered it unreasonably dangerous for its intended and anticipatable uses;

R. Failed to make subsequent remedial measures after learning, knowing, or having reason to know of the defects existing in the product that rendered it unreasonably dangerous for its intended use;

S.  Failed to listen to or investigate complaints about the defects existing in the product that rendered it unreasonably dangerous for its intended use;

T.  Ignored or failed to investigate scientific, technological, and industrial information and studies regarding the efficacy of flame arresters and/or explosion suppression materials;

U.  Ignored or failed to investigate national publications relating to the dangers and risks involved with the use of portable gasoline containers that do not contain flame arresters;

V.  Ignored or failed to investigate other lawsuits involving similar claims and incidents, in which consumers, users, and bystanders are severely and routinely burned and killed when encountering such portable gasoline containers;

W.  Failed to request that the ASTM International F15.10 Subcommittee consider a standard to include flame arresters and/or explosion suppression materials in portable gasoline containers;

X.  Failed to report incidences and lawsuits involving consumers, users, and/or bystanders, who have been burned, injured and/or killed when encountering its portable gasoline containers to the Consumer Product Safety Commission;

Y.  Placed into the stream of commerce a portable gasoline container which was unfit for its intended and\or reasonably foreseeable uses;

9

Z. Placed into the stream of commerce a dangerous article likely to cause injury in its ordinary use;

AA. Placed into the stream of commerce a product that was defective in design;

BB. Placed into the stream of commerce a product that was defective in manufacture;

CC. Placed into the stream of commerce a container that was defectively manufactured using unapproved plastic resins; and

DD. Negligently did not adequately determine and test all potential unintended consequences of placing flame arresters or explosion suppression materials in its containers.

22. The portable gasoline container at issue was defective and unreasonably dangerous when it left Defendant Blitz's control and was in substantially the same condition at the time the incident occurred that gave rise to this complaint.

23. The injuries of Dylan J. Trevino and the manner in which they occurred were reasonably foreseeable to Defendant Blitz who had actual knowledge from the industry, from national publications as well as from prior lawsuits that consumers were and are being severely burned when encountering their portable gasoline containers.

24. The acts and omissions of Defendant Blitz described hereinabove constitute a flagrant disregard for the safety of those who may be harmed by their portable gasoline containers, including the Plaintiffs, for which Defendant Blitz is liable in punitive damages in an amount to be determined by the jury.

## COUNT II
### (Strict Liability; Adequacy of Warnings)

25. Plaintiffs adopt the allegations of paragraphs 1 – 24 above and incorporate the same where relevant.

26. Defendant Blitz designed, developed, produced, marketed, sold, created, molded, made, constructed, and/or assembled the portable gasoline container that caused Plaintiff Dylan J. Trevino's injuries.

27. Defendant did not exercise reasonable care under the circumstances to warn users of its product of the defective and unreasonably dangerous design and condition.

28. Because Blitz failed to adequately warn the consumer, the container is dangerous to an extent beyond that which would be contemplated by a normal consumer.

29. At the time that this product left Defendant Blitz and at all times, complained of, practical, economical and technically feasible alternative warning designs were and still are available. These alternative designs would have made the warning more conspicuous and more informative. Properly informing the consumer would have prevented this incident and the injuries suffered by the Plaintiffs without substantially impairing the usefulness or intended purpose of the product.

30. The portable gasoline container designed, manufactured, marked, sold, and distributed by Defendant Blitz was in a defective condition and unreasonably dangerous to users, consumers, and bystanders in that Defendant:

A. Failed to provide adequate instructions and necessary warnings with the product, after learning, knowing, or having reason to know of the defect existing in the product that rendered it unreasonably dangerous;

B. Failed to provide an adequate and readable warning of the risks involving gasoline vapors and explosions;

C. Failed to provide a warning that was reasonably designed to catch the attention of the user;

D. Failed to make the conspicuity of the warning commiserate with the danger of an exploding gasoline container;

E. Failed to provide a warning or instruction that described the nature and extent of danger involved in using the defective and unreasonably dangerous gasoline container;

F. Failed to provide adequate and proper instructions to avoid harm and danger while using the defective and unreasonably dangerous gasoline container;

G. Failed to warn foreseeable users of the container from the damages present in the use of the container that the Defendant knew or should have known existed; and

H. Failed to provide an adequate and proper warning advising the user or consumer of the conditions which must exist in order for an explosion to occur, thereby allowing the user to avoid such conditions.

## COUNT III
### (Strict Liability – Manufacturing Defect)

31. Plaintiffs adopt the allegations of paragraphs 1 - 30 above and incorporate the same where relevant.

32. Blitz's gasoline containers were in a defective condition and were unreasonably dangerous because of defects in the manufacturing process. These defects create hidden dangers and thus make the gasoline containers dangerous to an extent beyond that which is contemplated by the ordinary consumer.

33. Further, a reasonable product manufacturer or seller would not put Blitz gasoline containers on the market if it knew about these manufacturing defects. Blitz not only knew about the manufacturing defects, but consciously and recklessly disregarded them.

34. The manufacturing flaws in Blitz's portable plastic gasoline containers include but are not limited to:

   A. Use of plastic resins which had not been approved by Underwriter's Laboratories for use in Blitz' containers, and

   B. Manufacture of plastic containers whose wall thickness did not meet industry standards, thereby causing it to rupture at a lower PSI than normally expected.

## COUNT IV
### (Post-Sale Duty to Warn)

35. Plaintiffs adopt paragraphs 1 – 34 above and incorporate the same where relevant.

13

36. Even if, at the time Blitz manufactured the container, it was unaware of the frequency and severity of the danger posed by flashback explosions in consumer gasoline containers, Blitz became aware of the conditions which must exist, the severity and frequency of those dangers through subsequent scientific research and lawsuits. As such, a reasonable person in Blitz's position would provide a warning after the sale of the product.

37. Blitz knows and\or reasonably should know that its gasoline containers pose a substantial risk of harm to persons and property. Blitz has seen scientific proof that gasoline containers can explode and the conditions that must exist for such explosions to occur. Blitz is aware that gasoline container explosions have injured, maimed, and killed its customers. Thus, Blitz realizes the severe and substantial risk that an exploding gasoline container poses to consumers.

38. Blitz is the largest manufacturer of portable plastic gasoline containers in the United States and the world. The majority of American households that have plastic gasoline containers have Blitz plastic gasoline containers. Further, the average consumer is unaware of both the conditions that cause a gasoline container to explode and the level of harm that can result from such an explosion. Therefore, Blitz knows that most of the consuming public has its product, and that the public is generally unaware of the risk of harm posed by flashback explosions in portable plastic consumer gasoline containers.

39. Blitz has the ability and resources to effectively communicate a post-sale warning to the consuming public. Moreover, the general public is more likely to act upon a post-sale warning campaign than it is to act upon the inconspicuous red-on-red warning that

14

Blitz embosses onto the side of the container. Accordingly, a post-sale warning can be effectively communicated and acted upon by those to whom the warning would be provided.

40. When vapors from a portable plastic gasoline container ignite and flashback into the can causing an internal combustion, the result is that the can over-pressurizes, causing the container to rupture. This explosive over-pressurization spews flaming gasoline out of the ruptured container and causes devastating injury and death. Thus the risk of harm posed by an exploding gasoline container is sufficiently great to justify the burden of providing a post-sale warning.

41. The failure to provide an appropriate post-sale warning directly and proximately caused Dylan J. Trevino's injuries because without them the Plaintiffs were not sufficiently aware of the terrible dangers that flashback explosions and gasoline containers pose.

## COUNT V
### (Negligent Misrepresentation)

42. Plaintiffs adopt paragraphs 1 – 41 above and incorporate the same where relevant.

43. In manufacturing the Model 50810 gasoline container and placing that product into the stream of commerce, Blitz was acting in the course and scope of its business, in which Blitz has a pecuniary interest.

44. Defendant Blitz made careless and negligent misrepresentations to the public that its gasoline container was safe and without defect.

15

45. Defendant's statements and representations were false and involved a material fact concerning the character of quality of the gasoline container in question.

46. By placing the Model 50810 into the stream of commerce, Blitz has represented that the product is safe for all intended and anticipatable uses. Further, Blitz fails to provide adequate information upon which consumers can make decisions concerning the safety features or lack thereof on the gasoline containers they choose to purchase. This dearth of information means that consumers base their purchasing decisions on faulty premises.

47. Blitz failed to exercise reasonable care in obtaining and communicating information to the consuming public. Blitz did not conduct any testing or research about flame arrestors when designing its Model 50810 two gallon, eight ounce portable plastic gasoline container, despite the fact that Blitz was aware that consumers and users of its gasoline containers were being injured, maimed, and killed in gasoline container explosions.

48. Defendant Blitz was in a superior position to know such material facts, and Defendant Blitz should have reasonably foreseen that the Plaintiffs were likely to rely upon such misrepresentation of facts.

49. Plaintiffs justifiably relied on Blitz's representation that it made a safe product. Because of that reliance, Plaintiffs did not get the product for which they bargained and suffered harm.

## COUNT VI
**(Breach of Express and Implied Warranties)**

50. Plaintiffs adopt and incorporate by reference the allegations of paragraphs 1-

16

49 above.

51. Defendant Blitz, by and through the sale of the gasoline container in question, expressly and impliedly warranted to the public generally and to Plaintiffs specifically, that the gasoline container was fit for the purposes for which it was intended.

52. Plaintiffs made use of the gasoline container as alleged herein and as its use was intended and/or foreseen. Plaintiffs or some or all of them relied upon Defendant Blitz's express and implied warranties. Contrary thereto, the gasoline container was not fit for its intended and/or foreseen use, rendering the gasoline container in question unreasonably dangerous.

53. Defendant Blitz knowingly breached the express and implied warranties by the failure of the gasoline container itself and the improper marketing as to Defendant Blitz's failure to warn and failure to instruct in the safe operation of the gasoline can.

54. Defendant Blitz's breach of warranties and the gasoline container's defects rendered the gasoline container unreasonably dangerous, which actually and proximately caused Plaintiffs' injuries and damages.

## COUNT VII
### (Negligence and Recklessness)

55. Plaintiffs adopt the allegations of paragraphs 1 - 54 above and incorporate the same where relevant.

56. Defendant's acts and omissions were negligent and reckless and proximately caused Plaintiffs' injuries.

17

## DAMAGES

57. Plaintiffs adopt the allegations of paragraphs 1 – 57 above and incorporate the same where relevant.

58. This suit is brought to recover all damages recoverable under statutory and common law.

59. As both a producing and proximate result of Defendant's acts, omissions, and/or errors, Plaintiffs have suffered and continue to suffer harm, injury and damages. Plaintiff Dylan J. Trevino's damages include, but are not limited to: temporary disability, permanent disability, future lost wages, diminished earning capacity, physical deformity, disfigurement, physical pain and suffering, emotional distress, emotional pain and anguish, scars, itching, increased susceptibility to other ailments, past and future medical care and treatment, and increased living and support expenses, loss of consortium, loss of earning capacity, mental pain and anguish, and loss of enjoyment of life. Plaintiff therefore seeks recovery for his compensatory damages.

60. Plaintiff Diana Trevino, as mother and natural guardian of Dylan J. Trevino, has suffered from Blitz's actions as well, and her damages include all damages allowed under Tennessee law to include, but not limited to emotional distress, past and future medical care and treatment, and increased living and support expenses, loss of consortium, lost wages and loss of earning capacity, mental pain and anguish. Plaintiff therefore seeks recovery for her compensatory damages.

18

61. Plaintiffs further seeks punitive and exemplary damages, since the harm for which Plaintiffs seeks compensatory damages is the result of misconduct by the Defendant who manifested a flagrant disregard of the safety of persons who might be harmed by its defective product, and in doing so, the Defendant acted recklessly, maliciously and/or fraudulently.

62. WHEREFORE, Plaintiffs pray for judgment against Defendant as follows:

A. For damages in excess of $75,000.00 sustained by Plaintiffs, including, but not limited to, those injuries set forth above, in an amount to be determined by the trier of fact;

B. Trial by jury;

C. For punitive and exemplary damages;

D. For all costs of court and pre-judgment and post-judgment interest; and

E. For further relief as the court may deem just and proper.

Respectfully submitted,

**ANDERSON LAW FIRM**

By: *Hank Anderson* (by DLC w/ pm)
Hank Anderson, Esq.
TSB #01220500
4245 Kemp Boulevard, Suite 810
Wichita Falls, Texas 76310
(940) 691-7600
(940) 228-3194 (FAX)

**KINNARD, CLAYTON and BEVERIDGE**

By: *Randall L. Kinnard* (DLC)
Randall L. Kinnard      #4714
Daniel L. Clayton       #12600
127 Woodmont Boulevard
Nashville, Tennessee
(615) 297-1007
(615) 297-1505 (FAX)

ATTORNEY FOR PLAINTIFFS