IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
COLUMBIA DIVISION

| | |
|---|---|
| **DYLAN J. TREVINO, A Minor, Suing By his Next Friend and Guardian, DIANA TREVINO, and DIANA TREVINO, Individually,** | ) |
| **Plaintiffs,** | ) |
| | ) **Civil Action No. 1:10-cv-00115** |
| **vs.** | ) **JUDGE HAYNES** |
| | ) |
| **BLITZ U.S.A., INC.; LAM 2011 HOLDINGS, LLC, f/k/a BLITZ HOLDINGS, LLC; KINDERHOOK CAPITAL FUND II, L.P.; BLITZ ACQUISITION HOLDINGS, INC.; BLITZ ACQUISITION, LLC; and BLITZ RE HOLDINGS, LLC.** | ) **JURY DEMANDED** |
| **Defendants.** | ) |

## FIRST AMENDED COMPLAINT FOR DAMAGES

COME NOW Plaintiffs, DYLAN J. TREVINO, A Minor, Suing by his Next Friend and Guardian, DIANA TREVINO and DIANA TREVINO, Individually, and for complaint against Defendants would show the Court as follows:

## PARTIES

1. Plaintiffs Dylan J. Trevino and Diana Trevino are citizens and residents of the state of Tennessee, County of Maury, residing at 1990 Lasea Court, Spring Hill, Tennessee 37174.

2. Defendant Blitz, U. S. A., Inc. ("Blitz") designed, manufactured, produced and sold the subject portable plastic gasoline container. Blitz is the largest manufacturer of plastic gas cans in the United States. Blitz is a foreign corporation that maintains its primary offices in the state of Oklahoma and does business in the state of Tennessee and can be served with process

by serving its registered agent: C.T. Corporation System, 800 S. Gay Street, Suite 2021, Knoxville, Tennessee 37929.

3. LAM 2011 Holdings, LLC (f/k/a Blitz Holdings, LLC), is a foreign limited liability company and can be served with process by serving its registered agent: Corporation Service Company, 2711 Centerville Road, Suite 400, Wilmington, New Castle County, Delaware 19808.

4. Kinderhook Capital Fund II, L.P. is a foreign limited partnership and can be served with process by serving its registered agent: Corporation Service Company, 2711 Centerville Road, Suite 400, Wilmington, New Castle County, Delaware 19808.

5. Blitz Acquisition Holdings, Inc. is a foreign corporation and can be served with process by serving its registered agent: Corporation Service Company, 2711 Centerville Road, Suite 400, Wilmington, New Castle County, Delaware 19808.

6. Blitz Acquisition, LLC is a foreign limited liability company and can be served with process by serving its registered agent: Corporation Service Company, 2711 Centerville Road, Suite 400, Wilmington, New Castle County, Delaware 19808.

7. Blitz RE Holdings, LLC is a foreign limited liability company and can be served with process by serving its registered agent: Corporation Service Company, 2711 Centerville Road, Suite 400, Wilmington, New Castle County, Delaware 19808.

## VENUE AND JURISDICTION

8. Subject matter jurisdiction is proper under 28 U.S.C. § 1332 in that diversity of citizenship exists between Plaintiffs and Defendants and the amount in controversy as to Plaintiffs and as to Defendants exceeds, exclusive of costs and interest, the sum of Seventy-Five Thousand and No/100 Dollars ($75,000.00).

9. Plaintiffs are citizens of Maury County, Tennessee.

10. Defendant Blitz U.S.A., Inc. is an Oklahoma corporation whose principal place of business is in Oklahoma.

11. Defendant LAM 2011 Holdings, LLC (f/k/a Blitz Holdings, LLC), is a Delaware limited liability company whose registered office is in Delaware.

12. Defendant Kinderhook Capital Fund II, L.P. is a Delaware limited partnership whose registered office is in Delaware.

13. Defendant Blitz Acquisition Holdings, Inc. is a Delaware corporation whose registered office is in Delaware.

14. Defendant Blitz Acquisition, LLC is a Delaware limited liability company whose registered office is in Delaware.

15. Defendant Blitz RE Holdings, LLC is a Delaware limited liability company whose registered office is in Delaware.

16. The incident, which is the subject of this complaint, occurred at 1990 Lasea Court, Spring Hill, Tennessee 37174.

## FACTS

17. The morning of December 23, 2009, five-year old Dylan J. Trevino sustained horrible injuries when the gasoline container he was holding exploded and covered him with flaming gasoline. On that morning, Dylan J. Trevino sought to reignite the coals of the fire around which his family had gathered and sang Christmas songs the night before. Unable to rekindle the fire with leaves alone, Dylan J. Trevino retrieved a Blitz Model 50810 two-gallon, eight ounce gasoline container by climbing up to a top shelf where the container was

stored out of his reach. As Dylan J. Trevino tilted the Blitz Model 50810 - containing a small amount of gasoline - towards the fire, the can exploded and inundated Dylan J. Trevino with flames. Both a neighbor and Dylan J. Trevino's older brother heard the explosion. The neighbor and brother got to Dylan and extinguished the flames on Dylan J. Trevino. Emergency personnel arrived and transported Dylan J. Trevino to the University of Vanderbilt Medical Center. From there, Dylan J. Trevino went to the Shriner's Burn Center in Cincinnati, Ohio.

18. Dylan J. Trevino suffered catastrophic burns over 65% of his body. As a direct and proximate cause of Defendant Blitz's acts and omissions, he has permanent physical scars from the burning. Due to the burns, he lost all of the fingers on his right hand. Additionally, he also lost all but one centimeter of his small intestine. Dylan J. Trevino now eats through a feeding tube and will never be able to eat solid foods again. Dylan J. Trevino has suffered permanent physical and emotional injuries that will require medical treatment for the rest of his life.

19. Defendant Blitz's acts and omissions in designing, formulating, producing, constructing, creating, assembling, testing, manufacturing, engineering, marketing, and selling the Model 50810 portable plastic gasoline container directly and proximately caused unimaginable pain and suffering for Dylan J. Trevino, both now and for the rest of his life. Further, Dylan J. Trevino is now subject to severe physical disabilities, horrible scarring, disfigurement, and emotional distress. As a result of these injuries, Dylan J. Trevino has suffered a loss of earning capacity and has incurred past medical and other related expenses. Dylan J. Trevino's injuries are permanent. Blitz, through its acts and omissions, has irrevocably diminished Dylan J. Trevino's capacity to carry out normal activities and enjoy many of the basics of life.

## COUNT I

**(Strict Liability in Tort-Design Defect)**

20. Plaintiffs adopt the allegations of paragraphs 1-9 above and incorporate the same where relevant.

21. Defendant Blitz U.S.A., Inc. designed, developed, produced, created, molded, made, constructed, assembled, marketed, sold, and placed into the stream of commerce the portable gasoline container that caused Dylan J. Trevino's injuries.

22. The portable gasoline container was in a defective condition, unreasonably dangerous, and unsafe for normal and reasonably anticipated use. The container did not include a flame-arrester device, which is a necessary safety device. A flame arrester -sometimes referred to as a explosion suppression device, a flash arrester, or spark arrester - prevents combustible vapor mixtures inside a container from exploding by absorbing and dissipating heat, keeping the internal temperature below the explosion flashpoint.

23. The most common type of flame arrestor is a piece of metal placed in each opening of a container. It can be either, a perforated metal disc or cylindrical basket, or a woven metal mesh screen, either flat or cylindrical shaped. This prevents the "flashback" of flames into the can. A flashback is where vapors outside of the gasoline container ignite, the flame follows the vapor trail back into the container like a fuse to a bomb, and the vapors inside the container then ignite and explode. A flame arrestor placed in the opening of the container quenches the flame before it can reach the contents of the container, preventing the container from exploding.

24. Another type of flame arrestor is often referred to as "explosion suppression material." Explosion suppression materials are usually expanded metal balls or bats that look like long, thin strips of aluminum foil woven together in a "rubber-band-ball" fashion. Instead of

being placed in the opening of the container, these materials are placed inside the container. The materials absorb and dissipate heat to prevent ignition inside the container, and the result is that the container will not explode when it experiences a flashback.

25. Over 200 years ago, mining lamps used flame arrestor screens to prevent the flame from the lamp from igniting combustible vapors in the mine and causing an explosion. The efficacy of flame arresters has been known to the manufacturing industry since the early 1970's, and particularly to the manufacturers of portable metal and plastic gasoline containers. They were first put into safety cans in the 1950's, into consumer metal gasoline containers in 1978 and consumer plastic containers in 1988.

26. Prior to the injuries sustained by Dylan J. Trevino, Defendant Blitz U.S.A., Inc. had known or should have known for years that its gasoline containers were susceptible to flashback, i.e., the gasoline vapors ignite and follow the vapor trail back into the can causing the can to explode and/or spew flames and burning gasoline.

27. In this case, the portable gasoline container exploded and unexpectedly sprayed burning gasoline onto Dylan J. Trevino causing him grievous injuries. Had the gasoline container included the flame arrester, this injury would not have occurred. Defendant Blitz U.S.A., Inc. has made, and continues to make, a conscious decision to disregard the safety of its consumers in general, and of children in particular, by not including this well-known and inexpensive safety device in its product.

28. At the time that this product left Defendant Blitz U.S.A., Inc. and at all times, complained of, practical, economical and technically feasible alternative designs were and still are available as described in paragraphs 23 and 24 above. These alternative designs would have

prevented this incident and the injuries suffered by the Plaintiffs without substantially impairing the usefulness or intended purpose of the product.

29. The nature and magnitude of the foreseeable risks involved with the use of Blitz U.S.A., Inc.'s gasoline containers far exceed any benefits associated with its design. Therefore, a reasonable product manufacturer would not put the Blitz U.S.A., Inc. gasoline containers on the market if it knew of the dangerous condition posed by flashback explosions in the absence of a flame arrestor. Blitz U.S.A., Inc. not only knew about the danger of flashback explosions in the absence of flame arrestors, but also consciously and recklessly disregarded that risk in the design and marketing of its gasoline containers.

30. Consumers and users were not and are not likely to possess general knowledge of the magnitude of the risks associated with using gasoline containers as designed, nor could they appreciate such risks. As such, Blitz's portable plastic consumer gasoline containers are dangerous to an extent beyond which is contemplated by a normal consumer. On the other hand, Defendant Blitz U.S.A., Inc. does know and is certainly in the best position to know that its gasoline containers as designed, pose tremendous and horrific risks to consumers.

31. The portable gasoline container designed, manufactured, marketed, sold, and distributed by Defendant Blitz U.S.A., Inc. was defective and unreasonably dangerous to users and bystanders, in that said Defendant committed the following acts and/or omissions, which is not an exhaustive list:

A. Failed to use due care in the design, manufacture, and distribution of the subject portable gasoline container;

B. Failed to provide a reasonably safe gasoline container;

C. Failed to provide a reasonably safe design in the construction and manufacture of the portable gasoline container;

D. Failed to provide adequate safeguards to ensure safe use of the product;

E. Designed, manufactured, sold, and distributed a gasoline container which malfunctioned;

F. Failed to guard against hidden or latent defects;

G. Failed to guard against flashback in the product design;

H. Failed to include a flame arrester in the product design;

I. Failed to include explosion suppression material in the product design;

J. Failed to include an explosion suppression system in the product design;

K. Failed to actively seek information and maintain a library and/or computer database documenting incidents in which consumers, users, and bystanders are injured and killed when encountering and using such portable gasoline containers;

L. Failed to actively seek information and maintain a library or database documenting incidents involving explosion and/or internal combustion of portable gasoline containers;

M. Failed to warn the consumer or user of the conditions which must exist in order for a container to explode;

N. Failed to properly or adequately test its portable gasoline containers and prototypes thereof with flame arresters and/or explosion suppression materials;

O. Failed to protect foreseeable users of the portable gasoline container from the dangers present in the use of the container, that it knew or should have known existed;

P. Failed to give adequate notice to consumers and users of the concealed danger, namely that gasoline vapors outside the container, when exposed to an ignition source, can ignite and that the ensuing flames can travel back inside the container causing internal combustion and explosion;

Q. Failed to provide post-sale warnings after learning, knowing, or having reason to know of the defects existing in the product that rendered it unreasonably dangerous for its intended and anticipatable uses;

R. Failed to make subsequent remedial measures after learning, knowing, or having reason to know of the defects existing in the product that rendered it unreasonably dangerous for its intended use;

S. Failed to listen to or investigate complaints about the defects existing in the product that rendered it unreasonably dangerous for its intended use;

T. Ignored or failed to investigate scientific, technological, and industrial information and studies regarding the efficacy of flame arresters and/or explosion suppression materials;

U. Ignored or failed to investigate national publications relating to the dangers and risks involved with the use of portable gasoline containers that do not contain flame arresters;

V. Ignored or failed to investigate other lawsuits involving similar claims and incidents, in which consumers, users, and bystanders are severely and routinely burned and killed when encountering such portable gasoline containers;

W. Failed to request that the ASTM International F15.10 Subcommittee consider

a standard to include flame arresters and/or explosion suppression materials in portable gasoline containers;

X. Failed to report incidences and lawsuits involving consumers, users, and/or bystanders, who have been burned, injured and/or killed when encountering its portable gasoline containers to the Consumer Product Safety Commission;

Y. Placed into the stream of commerce a portable gasoline container which was unfit for its intended and\or reasonably foreseeable uses;

Z. Placed into the stream of commerce a dangerous article likely to cause injury in its ordinary use;

AA. Placed into the stream of commerce a product that was defective in design;

BB. Placed into the stream of commerce a product that was defective in manufacture;

CC. Placed into the stream of commerce a container that was defectively manufactured using unapproved plastic resins; and

DD. Negligently did not adequately determine and test all potential unintended consequences of placing flame arresters or explosion suppression materials in its containers.

32. The portable gasoline container at issue was defective and unreasonably dangerous when it left Defendant Blitz U.S.A., Inc.'s control and was in substantially the same condition at the time the incident occurred that gave rise to this complaint.

33. The injuries of Dylan J. Trevino and the manner in which they occurred were reasonably foreseeable to Defendant Blitz U.S.A., Inc. who had actual knowledge from the industry, from national publications as well as from prior lawsuits that consumers were and are being severely burned when encountering and using their portable gasoline containers.

34. The acts and omissions of Defendant Blitz U.S.A., Inc. described hereinabove constitute a flagrant disregard for the safety of those who may be harmed by their portable gasoline containers, including the Plaintiffs, for which Defendant Blitz U.S.A., Inc. is liable in punitive damages in an amount to be determined by the jury.

## COUNT II

**(Strict Liability-Adequacy of Warnings)**

35. Plaintiffs adopt the allegations of paragraphs 1-34 above and incorporate the same where relevant.

36. Defendant Blitz U.S.A., Inc. designed, developed, produced, marketed, sold, created, molded, made, constructed, and/or assembled the portable gasoline container that caused Plaintiff Dylan J. Trevino's injuries.

37. Defendant Blitz U.S.A., Inc. did not exercise reasonable care under the circumstances to warn users of its product of the defective and unreasonably dangerous design and condition.

38. Because Blitz U.S.A., Inc. failed to adequately warn the consumer, the container is dangerous to an extent beyond that which would be contemplated by a normal consumer.

39. At the time that this product left Defendant Blitz U.S.A., Inc. and at all times, complained of, practical, economical and technically feasible alternative warning designs were and still are available. These alternative designs would have made the warning more conspicuous and more informative. Properly informing the consumer would have prevented this incident and the injuries suffered by the Plaintiffs without substantially impairing the usefulness or intended purpose of the product.

40. The portable gasoline container designed, manufactured, marked, sold, and distributed by Defendant Blitz U.S.A., Inc. was in a defective condition and unreasonably dangerous to users, consumers, and bystanders in that said Defendant:

A. Failed to provide adequate instructions and necessary warnings with the product, after learning, knowing, or having reason to know of the defect existing in the product that rendered it unreasonably dangerous;

B. Failed to provide an adequate and readable warning of the risks involving gasoline vapors and explosions;

C. Failed to provide a warning that was reasonably designed to catch the attention of the user;

D. Failed to make the conspicuity of the warning commiserate with the danger of an exploding gasoline container;

E. Failed to provide a warning or instruction that described the nature and extent of danger involved in using the defective and unreasonably dangerous gasoline container;

F. Failed to provide adequate and proper instructions to avoid harm and danger while using the defective and unreasonably dangerous gasoline container;

G. Failed to warn foreseeable users of the container from the damages present in the use of the container that the Defendant Blitz U.S.A., Inc. knew or should have known existed; and

H. Failed to provide an adequate and proper warning advising the user or consumer of the conditions which must exist in order for an explosion to occur, thereby allowing the user to avoid such conditions.

## COUNT III

### (Strict Liability-Manufacturing Defect)

41. Plaintiffs adopt the allegations of paragraphs 1-40 above and incorporate the same where relevant.

42. Blitz U.S.A., Inc.'s gasoline containers were in a defective condition and were unreasonably dangerous because of defects in the manufacturing process. These defects create hidden dangers and thus make the gasoline containers dangerous to an extent beyond that which is contemplated by the ordinary consumer.

43. Further, a reasonable product manufacturer or seller would not put Blitz U.S.A., Inc.'s gasoline containers on the market if it knew about these manufacturing defects. Blitz U.S.A. Inc. not only knew about the manufacturing defects, but consciously and recklessly disregarded them.

44. The manufacturing flaws in Blitz U.S.A., Inc.'s portable plastic gasoline containers include but are not limited to:

A. Use of plastic resins which had not been approved by Underwriter's Laboratories for use in Blitz U.S.A., Inc.'s containers; and

B. Manufacture of plastic containers whose wall thickness did not meet industry standards, thereby causing it to rupture at a lower PSI than normally expected

## COUNT IV

### (Negligent Misrepresentation)

45. Plaintiffs adopt the allegations of paragraphs 1-44 above and incorporate the same where relevant.

46. In manufacturing the Model 50810 gasoline container and placing that product into the stream of commerce, Defendant Blitz U.S.A., Inc. was acting in the course and scope of its business, in which said Defendant has a pecuniary interest.

47. Defendant Blitz U.S.A., Inc. made careless and negligent misrepresentations to the public that its gasoline container was safe, without defect, and complied with the applicable standards and regulations.

48. Defendant Blitz U.S.A., Inc.'s statements and representations were false and involved a material fact concerning the character of quality of the gasoline container in question. By placing the Model 50810 into the stream of commerce, Blitz has represented that the product is safe for all intended and anticipatable uses. Further, Blitz U.S.A., Inc. fails to provide adequate information upon which consumers can make decisions concerning the safety features or lack thereof on the gasoline containers they choose to purchase. This dearth of information means that consumers base their purchasing decisions on faulty premises.

49. Defendant Blitz U.S.A., Inc. failed to exercise reasonable care in obtaining and communicating information to the consuming public. Blitz U.S.A., Inc. did not conduct any testing or research about flame arrestors when designing its Model 50810 two gallon, eight ounce portable plastic gasoline container, despite the fact that said Defendant was aware that consumers and users of its gasoline containers were being injured, maimed, burned, and killed in gasoline container explosions.

50. Defendant Blitz U.S.A., Inc. was in a superior position to know such material facts, and said Defendant should have reasonably foreseen that the Plaintiffs were likely to rely upon such misrepresentation of facts.

51. Plaintiffs justifiably relied on Blitz U.S.A., Inc.'s representation that it made a safe product. Because of that reliance, Plaintiffs did not get the product for which they bargained and suffered harm.

**COUNT V**

**(Breach of Express and Implied Warranties)**

52. Plaintiffs adopt the allegations of paragraphs 1-51 above and incorporate the same where relevant.

53. Defendant Blitz U.S.A., Inc., by and through the sale of the gasoline container in question, expressly and impliedly warranted to the public generally and to Plaintiffs specifically, that the gasoline container was fit for the purposes for which it was intended.

54. Plaintiffs made use of the gasoline container as alleged herein and as its use was intended and/or foreseen. Plaintiffs or some or all of them relied upon Defendant Blitz U.S.A., Inc.'s express and implied warranties. Contrary thereto, the gasoline container was not fit for its intended and/or foreseen use, rendering the gasoline container in question unreasonably dangerous.

55. Defendant Blitz U.S.A., Inc. knowingly breached the express and implied warranties by the failure of the gasoline container itself and the improper marketing as to said Defendant's failure to warn and failure to instruct in the safe operation of the gasoline can. Defendant Blitz U.S.A., Inc.'s breach of warranties and the gasoline container's defects rendered the gasoline container unreasonably dangerous, which actually and proximately caused Plaintiffs' injuries and damages.

**COUNT VI**

**(Negligence and Recklessness)**

56. Plaintiffs adopt the allegations of paragraphs 1-55 above and incorporate the same where relevant.

57. Defendant Blitz U.S.A., Inc.'s acts and omissions were negligent and reckless and proximately caused Plaintiffs' injuries.

**COUNT VII**

**(Piercing the Corporate Veil)**

58. Plaintiffs adopt the allegations of paragraphs 1-57 above and incorporate the same where relevant.

59. On September 21, 2007 the Elmburg Family, which owned Defendant Blitz U.S.A., Inc., announced that they had sold the company to an investment group comprised of Kinderhook Industries, LLC, a New York-based private equity firm, and Rocky J. Flick, Blitz U.S.A., Inc.'s current CEO.

60. Coinciding with the sale of Defendant Blitz U.S.A., Inc. to Kinderhook Industries and Mr. Flick, a complicated and opaque corporate ownership structure was instituted by its new owners comprised of various Delaware limited liability companies, corporations, and limited partnerships.

61. Defendant Blitz U.S.A., Inc., is currently a wholly owned subsidiary of Blitz Acquisition, LLC. [Docket No. 12].[1]

---

[1] In its Corporate Disclosure Statement, Defendant Blitz U.S.A., Inc. states it is "wholly owned by Blitz Acquisition**s**, LLC." (emphasis added). Upon information and belief, Plaintiffs assume that this is a typographical error.

62. Defendant Blitz RE Holdings, LLC, is a wholly owned subsidiary of Blitz Acquisition, LLC.

63. Defendant Blitz Acquisition, LLC, is a wholly owned subsidiary of Blitz Acquisition Holdings, Inc.

64. Defendant Blitz Acquisition Holdings, Inc. is a wholly owned subsidiary of LAM 2011 Holdings, LLC, f/k/a Blitz Holdings, LLC.

65. Defendant LAM 2011 Holdings, LLC, f/k/a Blitz Holdings, LLC, is a wholly or partially owned subsidiary of Defendant Kinderhook Capital Fund II, L.P.

66. Defendants LAM 2011 Holdings, LLC, f/k/a Blitz Holdings, LLC, and Kinderhook Capital Fund II, L.P. exercise complete dominion over the subsidiary entities listed above to such an extent that they are mere instrumentalities and conduits for these two companies.

67. Defendants LAM 2011 Holdings, LLC, f/k/a Blitz Holdings, LLC, and Kinderhook Capital Fund II, L.P. have used their control to divert the corporate assets and profits of Defendant Blitz U.S.A., Inc. to the various shell companies listed above in order to leave Blitz U.S.A., Inc. under-capitalized and without the funds to pay any lawful judgment against it.[2]

68. Plaintiffs seek to pierce the corporate veil in order to hold all of these entities liable for any judgment they may obtain against Blitz U.S.A., Inc.

**DAMAGES**

69. Plaintiffs adopt the allegations of paragraphs 1-68 above and incorporate the same where relevant.

---

[2] Documents produced by Blitz U.S.A., Inc. in this case evidence that its management planned and implemented a plan to re-appropriate the assets of Blitz U.S.A., Inc. into other shell companies ensuring that Blitz U.S.A., Inc. would not be able to satisfy a lawful judgment against it.

70. This suit is brought to recover all damages recoverable under statutory and common law.

71. As both a producing and proximate result of Defendant's acts, omissions, and/or errors, Plaintiffs have suffered and continue to suffer harm, injury and damages. Plaintiff Dylan J. Trevino's damages include, but are not limited to: temporary disability, permanent disability, future lost wages, diminished earning capacity, physical deformity, disfigurement, physical pain and suffering, emotional distress, emotional pain and anguish, scars, itching, increased susceptibility to other ailments, past and future medical care and treatment, and increased living and support expenses, loss of earning capacity, mental pain and anguish, and loss of enjoyment of life. Plaintiff therefore seeks recovery for his compensatory damages.

72. Plaintiff Diana Trevino, as mother and natural guardian of Dylan J. Trevino, has suffered from Blitz's actions as well, and her damages include all damages allowed under Tennessee law to include, but not limited to emotional distress, past and future medical care and treatment, increased living and support expenses, loss of earning capacity, mental pain and anguish. Plaintiff therefore seeks recovery for her compensatory damages.

73. Plaintiffs further seeks punitive and exemplary damages, since the harm for which Plaintiffs seeks compensatory damages is the result of misconduct by the Defendant Blitz U.S.A., Inc. who manifested a flagrant disregard of the safety of persons who might be harmed by its defective product, and in doing so, said Defendant acted recklessly, maliciously and/or fraudulently.

74. WHEREFORE, Plaintiffs pray for judgment against Defendants as follows:

A. For damages in excess of $75,000.00 sustained by Plaintiffs, including, but not limited to, those injuries set forth above, in an amount to be determined by the trier of fact;

B. Trial by jury;

C. For punitive and exemplary damages;

D. For all costs of court and pre-judgment and post-judgment interest; and

E. For further relief as the court may deem just and proper.

DATED this 9th day of September, 2011.

Respectfully submitted,

By: /s/ Hank Anderson
Hank Anderson
Texas Bar No. 01220500
Benton G. Ross
Texas Bar No. 01220500
THE ANDERSON LAW FIRM
4245 Kemp Blvd., Suite 810
Wichita Falls, Texas 76308
Tel: (940) 691-7600
Fax: (940) 228-3194
*Admitted Pro Hac Vice*

Randall L. Kinnard #4714
Daniel Clayton #12600
KINNARD, CLAYTON & BEVERIDGE
127 Woodmont Boulevard
Nashville, TN 37205
Tel: (615) 297-1007
Fax: (615) 297-1505

**ATTORNEY FOR PLAINTIFFS**

## **CERTIFICATE OF SERVICE**

I hereby certify that on this the 9th day of September, 2011, a true and correct copy of the above and forgoing, has been sent to the following counsel of record by means indicated below:

***Via* CM/ECF**
Mark C. Hegarty
Adrienne Hernandez
SHOOK, HARDY & BACON
2555 Grand Blvd.
Kansas City, MO 64108

***Via* CM/ECF**
John R. Tarpley
LEWIS, KING, KRIEG & WALDROP, P.C
424 Church Street, Suite 2500
Nashville, TN 37219

COUNSEL FOR DEFENDANT BLITZ, U.S.A., INC.

/s/ Hank Anderson
ATTORNEY FOR PLAINTIFFS