**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
COLUMBIA DIVISION**

| | |
|---|---|
| **DYLAN J. TREVINO, A Minor, Suing** ) | |
| **By his Next Friend and Guardian, DIANA** ) | |
| **TREVINO, and DIANA TREVINO,** ) | |
| **Individually,** ) | |
| ) | |
| **Plaintiffs,** ) | |
| ) | **Civil Action No. 1:10-cv-00115** |
| **vs.** ) | |
| ) | **JUDGE HAYNES** |
| **KINDERHOOK CAPITAL FUND II, L.P.;** ) | |
| **and KINDERHOOK INDUSTRIES, LLC,** ) | |
| ) | |
| **Defendants.** ) | **JURY DEMANDED** |

**MEMORANDUM IN OPPOSITION TO KINDERHOOK
CAPITAL FUND II, L.P.'S AND KINDERHOOK INDUSTRIES, LLC'S
MOTION TO DISMISS THE SECOND AMENDED COMPLAINT**

      Kinderhook Industries, LLC and Kinderhook Capital Fund II, L.P. move once

again to dismiss the Trevinos' claims against them. Despite the fact that the Trevinos

provided nine pages of new allegations in support of their claim to pierce the corporate

veil, the Kinderhook Defendants have employed the same arguments they espoused in

their first motion to dismiss.[1]

      Primarily, the Kinderhook Defendants argue that the Trevinos do not allege their

dominion and control over the Blitz corporate structure "in respect to the transaction at

issue." The Kinderhook Defendants mistakenly believe that the transaction at issue is the

"the design, manufacture, and sale" of the plastic gasoline container that injured Dylan

Trevino. [Docket No. 114 at 7]. The liability of the Kinderhook Defendants arises solely

---

[1] The Kinderhook Defendants summarily dismiss the fraud and abuse of the corporate form allegations in a single paragraph and blithely declare that these allegations simply "set forth irrelevant information and conclusory recitations…[that] in no way implicate the Kinderhook Defendants." [Docket No. 114 at 7-8].

out of their abuse of the corporate form to work a fraud or wrong. That is the standard under Tennessee law.

The Kinderhook Defendants also argue that (1) the Trevinos' Second Amended Complaint focuses too much about the Blitz entities and (2) that the Trevinos have not offered enough proof to pierce the veil of each the Blitz entities. The fact of the matter is that the Blitz subsidiaries operated entirely as a single entity and should be treated as such. What is more, the Kinderhook Defendants purposefully created the current Blitz corporate structure to defraud the creditors of Blitz U.S.A., Inc. and deplete the assets of the Blitz subsidiaries in order to avoid satisfying any lawful judgment against the subsidiary manufacturer. That is actionable under Tennessee law.

## FACTS

Originally, the conglomerate of business entities now operating as Blitz was known as U.S. Metal Container (USMC).[2] USMC produced portable metal gasoline containers, first for the military, and later for consumer use.[3] In the 1980s, USMC began to make plastic gasoline containers, and in the early 1990s, it changed its name to Blitz U.S.A., Inc., reflecting its new product line.[4] Originally, USMC—and later Blitz—was owned by the Elmburg family, who held the company through an Oklahoma corporation called Crestwood Holdings, Inc. (Crestwood).[5]

In 1994, the parents of minor plaintiff Stephanie Hart sued Blitz U.S.A., Inc. alleging that a Blitz gasoline container exploded and severely burned their daughter.[6] The

---

[2] Docket No. 109 – Exhibit 1 at p. 4-5, ¶9: Declaration of Rocky Flick, President and Chief Executive Officer of Blitz U.S.A., Inc., In Support of Debtors' Chapter 11 Petitions and First Day Motions.
[3] *Id.*
[4] *Id.*
[5] *Id.* at p. 5, ¶10.
[6] Docket No. 109 – Exhibit 2 at p. 38: *Hart et al. v. Blitz USA, Inc., et al.,* CV94-2013 (W.D.La.)

*Hart* case is pertinent because it was the first lawsuit to allege that a Blitz gasoline container was defectively designed for not including a flame arrestor. Since that time, plaintiffs have repeatedly come to Blitz with severe injuries caused by its gasoline containers and asked why it refused to equip them with a flame arrestor.

In the early to mid 2000s, the Elmburg family, concerned over the products liability suits, decided to sell Blitz U.S.A., Inc.[7] The ultimate buyers were Kinderhook Capital Fund II, L.P. (Kinderhook Capital)—a Delaware limited partnership that is owned, managed, and controlled by Kinderhook Industries, LLC (Kinderhook)—and its current President, Rocky Flick, along with several other senior Blitz executives. The final sale of the company occurred on September 12, 2007. But the story is much more complicated than that.

Several days before the Kinderhook Defendants purchased Blitz U.S.A., Inc., they created four new Delaware corporate entities: On September 6, 2007, Kinderhook formed (1) Blitz Holdings, LLC,[8] (2) Blitz Acquisition Holdings, Inc. (BAHI), and (3) Blitz RE Holdings, LLC (BlitzRE); then on September 9, 2007, (4) Blitz Acquisition, LLC (BALLC) was formed.[9] A paralegal from the New York office of law firm of Kirkland & Ellis LLP signed as organizer for all four Delaware entities.[10] The Kinderhook Defendants own 75.2% of LAM, which owns 100% of BAHI, which owns a 100% of

---

[7] Docket No. 109 – Exhibit 3.

[8] Docket No. 109 – Exhibit 4 at p. 49 - Blitz Holdings, LLC changed its name to LAM 2011 Holdings, LLC on April 8, 2011. Kinderhook Industries, LLC, Vice President, Louis Aurelio, executed the Certificate of Amendment.

[9] Docket No. 109 – Exhibits 5-8: Certificates of Formation for Blitz Holdings, LLC/LAM 2011 Holdings, LLC; Blitz Acquisition Holdings, Inc.; Blitz Acquisition, LLC; and Blitz RE Holdings, LLC.

[10] *Id.*

3

BALLC, which owns 100% of BlitzRE and Blitz U.S.A., Inc.[11] Thus, in reality, the

Kinderhook Defendants have always owned the majority of shares of each company.

On September 12, 2007, BALLC purchased the majority of shares of Blitz

U.S.A., Inc. (Blitz USA), the actual manufacturing company.[12] BlitzRE purchased all the

Blitz real estate from the Elmburgs on September 21, 2007.[13] BlitzRE then leased its real

estate to Blitz USA. Notably, both Blitz RE Holdings, LLC and Blitz U.S.A., Inc. used

the New York address Kinderhook Industries, LLC in the lease agreement as their own

individual business address.[14]

The corporate hierarchy of Blitz entities thus can be depicted as seen in Appendix

1. [Docket No. 107 at 263]. LAM, BAHI, BALLC, BlitzRE, and Blitz USA can be

referred to collectively as "the Blitz entities," because—as we are about to see—they

operate as a single business enterprise, and the Court should disregard their individual

corporate forms.

Three particular men are intertwined throughout the entire Blitz structure:

1. **Rocky Flick** is the President and CEO of the following Blitz entities:

    Blitz U.S.A, Inc.; Blitz RE Holdings, LLC; Blitz Acquisition, LLC;

    Blitz Acquisition Holdings, Inc.; and LAM 2011 Holdings, LLC. And

    Flick, along with the Kinderhook Defendants, was one of the two

    primary purchasers and equity holders in LAM 2011 Holdings, LLC

    (f/k/a Blitz Holdings, LLC).

---

[11] Docket No. 109 – Exhibit 9.

[12] Docket No. 109 – Exhibit 1 at p. 5, ¶10.

[13] Docket No. 109 – Exhibit 10: Special Warranty Deed.

[14] Docket No. 109 – Exhibit 11: Memorandum of Lease.

2. **Louis Aurelio** is Vice President of Kinderhook Industries, LLC, and also serves on the Board of Directors for the following entities at issue: Blitz U.S.A., Inc.; Blitz RE Holdings, LLC; Blitz Acquisition, LLC; Blitz Acquisition Holdings, Inc.; LAM 2011 Holdings, LLC; and F3 Brands, LLC.

3. **Christian P. Michalik** is a Managing Director of Kinderhook Industries, LLC (the direct parent of Kinderhook Capital Fund II, L.P.) and also serves as Chairman of the Board of Directors for the following entities at issue: Blitz U.S.A., Inc.; Blitz RE Holdings, LLC; Blitz Acquisition, LLC; Blitz Acquisition Holdings, Inc.; LAM 2011 Holdings, LLC; and F3 Brands, LLC.

These three men exemplify the interconnected nature the entities depicted in Appendix 1.

In February 2011, the Kinderhook Defendants used BAHI to purchase another company that specializes in plastic blow molding products: Reliance Products, LP (Reliance).[15] Just as with the Kinderhook Defendants' purchase of Blitz, the Defendants first formed a Delaware corporation as the holding company, Reliance Holdings, Inc. (RHI), that actually made the purchase. In order to make the purchase, the Kinderhook Defendants used Blitz USA's assets as collateral on several large loans.[16] As a result, a substantial portion of Blitz USA's equity was invested in a company tort claimants could not reach.

---

[15] Docket No. 109 – Exhibit 1 at p. 7, ¶14.

[16] *Id*. at p. 10-11, ¶22.

In October 2011, Blitz USA "spun off" all of its non-gasoline container products into a new company called F3 Brands, LLC (F3 Brands).[17] Kinderhook Industries, LLC, Vice President, Louis Aurelio, and Kinderhook Industries, LLC Managing Director, Christian P. Michalik, are listed as officers and Directors of F3 Brands.[18] Kinderhook Capital Fund II, L.P. is listed as an equity holder and equity partner.[19] Through this maneuver, Kinderhook succeeded in siphoning off a substantial number of assets into this new company so as to avoid liability from tort claimants.[20]

On November 9, 2011—less than a month after siphoning off a third of its assets into F3 Brands—all the Blitz entities declared bankruptcy under Chapter 11.[21] They all used the same bankruptcy attorneys, moved for joint administration, and generally treated themselves as a single enterprise of interconnected entities. CEO Rocky Flick has testified that Blitz was contemplating bankruptcy for about seven months before Blitz actually made its bankruptcy filing. [Docket No. 109 – Exhibit 15 at p. 101].

The Kinderhook Defendants have been and still are heavily involved with the Blitz debtors' bankruptcy process. BAHI purchased a company called Reliance Products, LP before it declared bankruptcy. The Blitz debtors, acting as one in the bankruptcy, are now trying to sell Reliance Products as a Debtor in Possession. The Kinderhook Defendants have acknowledged that they control the Reliance Products Board of Directors through the bankruptcy process. Thus, anything and everything in which Blitz has its hands in, the Kinderhook Defendants also have a hand in (if not several hands).

---

[17] *Id.* at 6.

[18] Docket No. 109 – Exhibit 12 at p. 79: Declaration of M. Daniel Smith.

[19] *Id.* at p. 77 (Equity Holder) and p. 78 (Equity Partner).

[20] *See* Appendix 2 - Docket No. 107 at p. 264.

[21] Docket No. 109 – Exhibit 1 at p. 2, ¶3.

## ARGUMENT

**I.    The Court Should Deny The Kinderhook Defendants' Motion to Dismiss Because the Trevinos' Complaint Provides Each Defendant Very Clear and Fair Notice of the Claims Against Them.**

     **a.  The Court Should Not Dismiss the Complaint Unless It Fails to State a Cognizable Claim.**

An action may be dismissed only if the complaint fails to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6). In deciding a Rule 12(b)(6) motion the Court "must construe the complaint in the light most favorable to the plaintiff, accept all factual allegations [of the plaintiff] as true, and determine whether the plaintiff undoubtedly can prove no set of facts in support of his claims that would entitle him to relief." *Allard v. Weitzman (In re DeLorean Motor Co.),* 991 F.2d 1236, 1240 (6th Cir.1993). The Court's function is to examine the complaint and determine whether the plaintiff has pleaded a cognizable claim. *Scheid v. Fanny Farmer Candy Shops, Inc.,* 859 F.2d 434, 436 (6th Cir.1988). The motion should not be granted "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Cameron v. Seitz,* 38 F.3d 264, 270 (6th Cir.1994) (quotation omitted).

     **b.  A Cognizable Claim for Piercing the Corporate Veil in Tennessee Requires Plaintiffs to Allege that Defendants Abused the Corporate Form to Defraud Creditors.**

The Kinderhook Defendants created and used the Blitz corporate structure to drain the equity of Blitz U.S.A., Inc.—the company that manufactured the gasoline container that exploded and burned five-year-old Dylan Trevino—to avoid payment of any lawful judgment against its subsidiary manufacturer. When companies engage in

"elaborate shell games or otherwise abus[e] the corporate form" in an effort to defraud creditors, then courts should pierce the corporate veil because "the corporation is a sham and exists for no other purpose than as a vehicle" for deprivation of creditors. *Southeast Tex. Inns, Inc. v. Prime Hospitality Corp.*, 462 F.3d 666, 674 (6th Cir. 2006) (citations omitted). The wrong committed by the Kinderhook Defendants was the fraudulent use and abuse of the corporate form to prevent tort-claimant creditors like Dylan Trevino from recovering for their losses caused by the defective gasoline container.

Under Tennessee law and Sixth Circuit precedent, an abuse of the corporate form—and not the design of the gasoline container—must serve as the basis for the Defendants' liability. Piercing the corporate veil "requires that the **corporate structure cause fraud** or similar injustice." *Southeast Tex. Inns*, 462 F.3d at 674 (6th Cir. 2006) (footnote and internal quotations omitted) (emphasis added). The underlying tort—in this case, the negligent and defective design of the Blitz gasoline container—cannot serve as the basis for piercing the corporate veil of the Kinderhook Defendants. *Id*. at 675 ("'The underlying cause of action does not supply the necessary fraud or injustice. To hold otherwise would render the fraud or injustice element meaningless, and would sanction bootstrapping.'") (quoting *Mobile Oil Corp. v. Linear Firms, Inc.*, 718 F. Supp. 260, 268 (D. Del. 1989)). It is the Kinderhook Defendants' abuse of the corporate form that warrants a veil-piercing claim, and the Defendants stubborn insistence that they did not "design, manufacture, and [sell]" the defective gasoline container at issue is unavailing.

c. **The Trevinos' Complaint Alleges the Kinderhook Defendants Established a System of Shell Corporations in 2007 and Used that Corporate Structure to Defraud Blitz USA's Creditors.**

The Trevinos' Second Amended Complaint sufficiently alleges that Kinderhook Capital Fund II, L.P. and Kinderhook Industries, LLC, used the corporate form as a vehicle to commit fraud, and the Court should therefore deny their motion to dismiss. The Complaint alleges that (1) the Kinderhook Defendants created the Blitz corporate structure and exercised dominion and control over each corporate entity, (2) the Kinderhook Defendants used that dominion and control to deplete Blitz U.S.A., Inc. of its assets through the acquisition of Reliance Products and the "spin-off" of F3 in 2011, and (3) the Kinderhook Defendants' actions have caused Blitz U.S.A., Inc. to be without the funds to satisfy any lawful judgment against it.

The three basic elements to a piercing the corporate veil claim under Tennessee law. **First**, one corporation must exercise or at least have the ability to exercise complete dominion and control over another corporation. *Continental Bankers Life Ins. Co. of the South v. Bank of Alamo*, 578 S.W.2d 625, 632 (Tenn. 1979). **Second**, that control must be used to commit a fraud or wrong. *Southeast Tex. Inns, Inc. v. Prime Hospitality Corp.*, 462 F.3d 666, 690 (6th Cir. 2006) (citing *Tenn. Racquetball Investors, Ltd. v. Bell*, 709 S.W.2d 617, 622 (Tenn. Ct. App. 1986)). **Third**, the control and alleged wrongdoing must be the proximate cause of harm to the plaintiff. *Continental Bankers*, 578 S.W.2d at 632. The Trevinos' Second Amended Complaint alleges facts that, if taken as true and with all reasonable inferences in the Trevinos' favor, show each of these three elements.

***The Trevinos allege sufficient facts to show that the Kinderhook Defendants controlled the Blitz corporate structure***. The Complaint alleges that Kinderhook Capital

Fund II, L.P. and Kinderhook Industries, LLC used the New York law firm of Kirkland & Ellis LLP to form Blitz Holdings, LLC/LAM, BAHI, BlitzRE, and BALLC. [Docket No. 103 at ¶¶ 62-65]. The Trevinos allege that the Kinderhook Defendants own the majority of voting shares for LAM, and LAM in turn owns the voting shares of BAHI, BAHI in turn owns the voting shares of BALLC, and BALLC owns the voting shares of BlitzRE and Blitz USA. [Docket No. 103 at ¶¶ 69-70]. Plaintiffs further allege that four of Kinderhook Industries, LLC's Managing Directors and its Vice President are on the boards of directors for the Blitz entities. [Docket No. 103 at ¶¶ 71-74]. Finally, the Trevinos allege that the Kinderhook Defendants used their position as majority shareholder, board chairman, and board member for each of the Blitz entities to control and dominate the Blitz corporate structure. [Docket No. 103 at ¶78].

*__The Trevinos allege sufficient facts to show that Kinderhook moved equity and funds out of Blitz USA with the intent to defraud creditors.__* First, the complaint alleges that, in February 2011, the Kinderhook Defendants used their dominion and control over the Blitz corporate structure to take out large loans against Blitz USA's assets, and then the Kinderhook Defendants used the money to purchase Canadian plastics manufacturer Reliance Products L.P. [Docket No. 103 at ¶82]. This effectively transferred equity once invested in Blitz USA, the manufacturer liable for Dylan Trevino's harm, and sunk that equity into a company outside Dylan's reach. Second, the Trevinos allege that, on May 17, 2011, the Kinderhook Defendants used their control and dominion of the Blitz corporate structure to form F3 Brands. Then on October 1, 2011, the Kinderhook Defendants used its control and dominion of the Blitz corporate structure to transfer half

of Blitz USA's 300 employees and a majority of Blitz's equipment and inventory into F3 Brands. [Docket No. 103 at ¶¶ 84-85].

The Trevinos also allege that the Kinderhook Defendants bought Reliance Plastics and funneled Blitz assets into F3 Brands with the specific intent to avoid payment of lawful judgments against Blitz USA. [Docket No. 103 at ¶¶ 80-J, 90-J]. That is an abuse of the corporate form and a "dishonest and unjust act in contravention of third parties' rights." *Pamerin v. Streamline Mfg., Inc.*, 276 S.W.3d 428, 437-38 (Tenn. Ct. App. 2008) (quoting *Continental Bankers*, 578 S.W.2d at 632). Thus, the Complaint alleges at least two explicit instances of the Kinderhook Defendants abuse of the corporate form to avoid paying tort-claimants like Dylan Trevino.

***The Complaint alleges sufficient facts to show that the Kinderhook Defendants' wrongful actions harmed the Trevinos***. The Trevinos allege that all of the entities in the Blitz corporate structure have declared bankruptcy and are now insolvent. [Docket No. 103 at ¶¶ 3, 89]. A reasonable inference (to which the Trevinos are entitled under the standard of review) is that insolvent defendants cannot pay judgments. Thus, the Trevinos's Second Amended Complaint contains sufficient factual allegations to allege that (1) the Kinderhook Defendants had dominion and control over the Blitz corporate entities; (2) the Kinderhook Defendants used that dominion and control to siphon assets and equity from its subsidiary manufacturer, Blitz U.S.A., Inc., to other entities with the specific intent of defrauding tort-claimants; and (3) those actions harmed the Trevinos, who are among the tort claimants left with an insolvent manufacturer unable to pay any lawful judgment.

### d. Because The Trevinos' Complaint Puts the Kinderhook Defendants on Notice as to the Nature of Claims, the Complaint Complies With Rules 8 and 9.

The Trevinos have pled with sufficient particularity to satisfy Federal Rule of Civil Procedure 9. While Rule 9(b) requires plaintiffs to plead with particularity when alleging fraud or fraud-like wrongdoing as part of its cause of action, "Rule 9(b) does not require omniscience; rather, the Rule requires that the circumstances of the fraud be pled with enough specificity to put defendants on notice as to the nature of the claims." *Michaels Bldg. Co. v. Ameritrust Co.*, 848 F.2d 674, 680 (6th Cir. 1988). Per the arguments above, the Kinderhook Defendants know exactly the claims against them. The Defendants stand accused of abusing the corporate form by fraudulently moving money out of Blitz U.S.A., Inc. and into other corporate entities to avoid paying creditors.

Any more specific information about the exact methods the Kinderhook Defendants used to siphon the equity out of Blitz USA would be in the Defendants possession. The Sixth Circuit holds that the Rule 9(b) requirements for particularity are relaxed in cases like this one, "where information is only within opposing party's knowledge." *Michaels Bldg.*, 848 S.W.2d at 680. The Trevinos cannot make more specific allegations without the benefit of discovery. "Especially in a case in which there has been no discovery, courts have been reluctant to dismiss the action where the facts underlying the claims are within the defendant's control."[22] *Id*. It is the Kinderhook Defendants that possess the documents and other evidence that will show how they used

---

[22] Plaintiffs anticipate that the Kinderhook Defendants will argue that plaintiffs have had discovery through the Blitz litigation. However, prior to its Chapter 11 Bankruptcy, Blitz USA objected to such requests and categorically refused to produce any documents regarding its sister subsidiaries and Kinderhook Capital. *See* Exhibit A, attached hereto.

the Blitz corporate structure to avoid paying any lawful judgment against the subsidiary manufacturer.

## II. All Blitz Entities Operated as a Single Business Enterprise, and Their Corporate Forms Should Be Set Aside

The Trevinos' Complaint alleges facts sufficient to pierce the veil of every corporate defendant between Blitz USA and Kinderhook. The Blitz entities—meaning LAM, BAHI, BALLC, Blitz USA, BlitzRE, and F3 Brands—use the same offices, have the same officers, each subsidiary wholly owns the next, they are undercapitalized, they did their books together, they used the same attorneys, and when they filed for bankruptcy they filed for joint administration because their operations were so "interconnected."

### a. The Allen Factors for Piercing the Corporate Veil Under Tennessee Law.

Tennessee law uses eleven different factors in deciding whether to pierce the corporate veil. Courts have called these the "*Allen* factors," after the first case to list them. *Federal Deposit Ins. Corp. v. Allen*, 584 F. Supp. 386 (E.D. Tenn. 1986). The Allen factors are:

(1) Whether there was a failure to collect paid in capital; (2) whether the corporation was grossly undercapitalized; (3) the nonissuance of stock certificates; (4) the sole ownership of stock by one individual; (5) the use of the same office or business location; (6) the employment of the same employees or attorneys; (7) the use of the corporation as a instrumentality or business conduit for an individual or another corporation; (8) the diversion of corporate assets by or to a stockholder or other entity to the detriment of creditors, or the

13

manipulation of assets and liabilities in another; (9) the use of the corporation as a subterfuge in illegal transactions; (10) the formation and use of the corporation to transfer to it the existing liability of another person or entity; and (11) the failure to maintain arms length relationships among related entities.

"It is most important to note that it is not necessary that all of the *Allen* factors weigh in plaintiff's favor in order to justify the piercing of the corporate veil." *Boles v. Nat'l Development Co., Inc.*, 175 S.W.3d 226, 246 (Tenn. Ct. App. 2004) (citing *Oceanics*, 112 S.W.3d at 140-141)).

The Trevinos cite both their Second Amended Complaint and several of Blitz's bankruptcy filings in the following section. The Court may lawfully consider Blitz's bankruptcy filings in a 12(b)(6) motion to dismiss. "Although typically courts are limited to the pleadings when faced with a motion under Rule 12(b)(6), a court may take judicial notice of other court proceedings without converting the motion into one for summary judgment." *Buck v. Thomas M. Cooley Law School*, 597 F.3d 812, 816 (6th Cir. 2010) (citing *Winget v. JP Morgan Chase Bank, N.A.*, 537 F.3d 576 (6th Cir. 2008)). Therefore, the Court may take judicial notice of and consider Blitz's bankruptcy filings.

**b. The Allen Factors Weigh Heavily in Favor of Disregarding the Corporate Forms of the Blitz Entities.**

All the Blitz entities have been operating as one business and cannot be treated as separate and apart from each other. The *Allen* factors illustrate this point.

14

- *Whether the corporation was grossly undercapitalized* - Each corporation has been grossly undercapitalized, as evidenced by the fact that all of those entities declared bankruptcy in November. [Docket No. 103 at ¶¶ 3, 89].

- *The sole ownership of stock by one individual-* Each Blitz entity is owned completely by the last: LAM owns BAHI,[23] BAHI owns BALLC,[24] which owns the actual manufacturing company, Blitz USA[25] as well as BlitzRE[26]—the vehicle that holds all the real estate that Blitz uses for manufacturing defective gasoline containers. Blitz USA owns F3 Brands[27] [Docket No. 103 at ¶¶ 69-70]. Thus, ownership of the entire Blitz structure is traced quickly back to LAM before it reaches Kinderhook itself.

- *The use of the same office or business location* - BAHI, BALLC, LAM, Blitz USA, and BlitzRE all share the same set of offices in Miami, Oklahoma. [Docket No. 103 at ¶¶ 80-F, 90-F].

- *The employment of the same employees or attorneys* - Rocky Flick is the CEO of BAHI, BALLC, LAM, Blitz USA, and BlitzRE. Further, Blitz USA is the only entity among them with any employees. [Docket No. 103 at ¶¶ 80-F, 90-F]. In other words, all the Blitz entities use the employees of Blitz U.S.A., Inc. When each BAHI, LAM, BALLC, and BlitzRE moved to dismiss in the case at bar, they all used the same attorneys, which were the same attorneys used by Blitz USA. [Docket Nos. 83, 85, 87, & 89]. That includes John Tarpley, Mark Hegarty, and

---

[23] Docket No. 109 – Exhibit 16 at p. 106: Voluntary Petition of Blitz Acquisition Holdings, Inc.
[24] Docket No. 109 – Exhibit 17 at p. 130: Voluntary Petition of Blitz Acquisition, LLC.
[25] Docket No. 109 – Exhibit 18 at p. 154: Voluntary Petition of Blitz U.S.A., Inc.
[26] Docket No. 109 – Exhibit 19 at p. 178: Voluntary Petition of Blitz RE Holdings, LLC.
[27] Docket No. 109 – Exhibit 20 at p. 202: Voluntary Petition of F3 Brands, LLC.

David Changas. Moreover, all of those entities filed for bankruptcy simultaneously and asked for a joint administration, confirming that the Blitz entities operate as a single business enterprise.[28]

- *The use of the corporation as an instrumentality or business conduit for an individual or another corporation* - LAM, BAHI, and BALLC do nothing but hold stock. They have no employees or offices. [Docket No. 103 at ¶¶ 80-F, 90-F]. They are mere conduits and instrumentalities through which Blitz USA and the Kinderhook Defendants have sought to avoid liability.

- *The diversion of corporate assets by or to a stockholder or other entity to the detriment of creditors, or the manipulation of assets and liabilities in another* - As recently as October of 2011, Blitz spun off a third of its assets into a new company called F3 Brands, LLC, solely to protect those assets from creditors of Blitz USA, namely tort claimants. [Docket No. 103 at ¶¶ 80-F, 90-F]. Rocky Flick, CEO of BALLC and BAHI, has acknowledged that he receives no salary for being CEO of the various Blitz sham companies. LAM, BAHI, and BALLC are not companies in their own rights, but are mere dummy companies used by the Kinderhook Defendants to fraudulently obtain limited liability.

- *The formation and use of the corporation to transfer to it the existing liability of another person or entity* – Again, the only reasons for the formation the various Blitz entities between Blitz USA and the Kinderhook Defendants were (1) to act as fraudulent liability buffer between the Blitz entities and the Kinderhook Defendants and (2) to provide a means through which the Kinderhook Defendants

---

[28] Docket No. 107 – Exhibit 1 at p. 15, ¶32.

could move assets through inter-corporate transfers and avoid paying tort claimants and other creditors. [Docket No. 103 at ¶¶ 80-J, 90-J].

- *The failure to maintain arms length relationships among related entities* – More than just keeping offices in the same place and using the same officers and directors, the Blitz entities used the same accounting professionals and co-mingled assets to form a single treasury. [Docket No. 103 at ¶¶ 80-J, 90-J]. This is evidenced by various financial and accounting documents and the Blitz debtors own bankruptcy filings.

The Blitz entities operate as one. Literally, Blitz admitted in court filings that LAM, BAHI, BALLC, Blitz USA, BlitzRE, and F3 Brands have "integrated operations."[29] They use the same lawyers, the same offices, and the same employees. They do their books together. They are so undercapitalized they had to declare bankruptcy despite having just sold their company for approximately seventy million dollars to the Kinderhook Defendants.

**III.     This Court Should Allow for Discovery Before Making a Final Ruling on Personal Jurisdiction of the Kinderhook Defendants**

A final ruling on personal jurisdiction is premature before the parties have had a chance to conduct discovery concerning the Kinderhook Defendants' continuing involvement with the Blitz corporate structure. If the Kinderhook Defendants corporate form may be set aside because of their misconduct, then they are subject to the jurisdiction of this Court. *See Boles v. Nat'l Dev. Co.*, 175 S.W.3d 226, 250-52 (Tenn. Ct. App. 2005) (recognizing that the court's exercise of personal jurisdiction over parent-

---

[29] Docket No. 107 – Exhibit 1 at p. 15, ¶33.

defendant based on the presence of its subsidiary in the state is proper when the corporate form is disregarded). The Kinderhook Defendants acknowledge that if the Blitz entities corporate veils are pierced, then they are subject to jurisdiction in Tennessee under what they term as "derivative jurisdiction." [Docket No. 114 at 11]. Without more information, it is improper to rule on this issue at this time.

DATED this 9th day of February, 2012.

Respectfully submitted,

By: /s/ Hank Anderson
Hank Anderson,
Texas Bar No. 01220500
Benton G. Ross,
Texas Bar No. 24068124
THE ANDERSON LAW FIRM
4245 Kemp Blvd., Suite 810
Wichita Falls, Texas 76308
T: (940) 691-7600
F: (940) 228-3194
*Admitted Pro Hac Vice*

And

Randall L. Kinnard  # 4714
Daniel L. Clayton    #12600
KINNARD, CLAYTON & BEVERIDGE
127 Woodmont Boulevard
Nashville, Tennessee
T: (615) 297-1007
F: (615) 297-1505
**ATTORNEYS FOR PLAINTIFFS**

## CERTIFICATE OF SERVICE

I hereby certify that on this the 9th day of February, 2012, a true and correct copy of the above and forgoing, has been sent to the following counsel of record by means indicated below:

*Via* **CM/ECF**
Wallace Wordsworth Dietz
Wendy M. Warren
Bass, Berry & Sims
150 Third Avenue South, Suite 2800
Nashville, TN 37201

*Via* **CM/ECF**
Timothy P. Harkness
Pamila Gudkov
FRESHFIELDS BRUCHHAUS DERINGER
601 Lexington Avenue, 31st Floor
New York, NY 10022

**COUNSEL FOR DEFENDANTS KINDERHOOK
CAPITAL FUND II, L.P. &
KINDERHOOK INDUSTRIES, LLC**

/s/ Hank Anderson
 Attorney for Plaintiffs