IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
COLUMBIA DIVISION

| | |
|---|---|
| DYLAN J. TREVINO, A Minor, Suing By His Next Friend and Guardian, DIANA TREVINO, and DIANA TREVINO, Individually, <br><br> Plaintiffs, <br><br> v. <br><br> KINDERHOOK INDUSTRIES LLC and KINDERHOOK CAPITAL FUND II, L.P., <br><br> Defendants. | Civil Action No: 1:10-cv-00115 <br><br> JUDGE HAYNES |

**REPLY IN FURTHER SUPPORT OF DEFENDANTS KINDERHOOK
INDUSTRIES, LLC AND KINDERHOOK CAPITAL FUND II, L.P.'S
MOTION TO DISMISS THE SECOND AMENDED COMPLAINT**

Defendants Kinderhook Industries, LLC ("Kinderhook Industries") and Kinderhook Capital Fund II, L.P. (the "Kinderhook Fund") (together, the "Kinderhook Defendants") respectfully submit, by special appearance and with leave of the Court, this reply in further support of their motion (the "Motion") to dismiss the Complaint pursuant to Rules 12(b)(2) and 12(b)(6) of the Federal Rules of Civil Procedure.[1] The Kinderhook Defendants do not waive any rights or defenses to lack of personal jurisdiction by this special appearance.

**PRELIMINARY STATEMENT**

In their Opposition to the Motion, Plaintiffs continue to pile on vague and irrelevant allegations in the hopes of saving this action. Not only are such allegations not properly

---

[1] Terms not otherwise defined herein have the meanings set forth in the Kinderhook Defendants' Memorandum of Law in Support of their Motion to Dismiss the Second Amended Complaint (the "Memorandum").

considered on this Motion,[2] Plaintiffs' scattershot theories, each one more far-fetched and illogical than the next, do not add up to a veil piercing claim and are insufficient to save this suit.

In essence admitting that they are unable to establish personal jurisdiction, Plaintiffs do not even address this aspect of the Kinderhook Defendants' argument, and instead make a plea for yet another opportunity to gather facts. But Plaintiffs have already had ample opportunity to establish the facts. This is not the first or second complaint that Plaintiffs have filed in this suit, but their third attempt to set forth a claim. Despite their multiple attempts, Plaintiffs have been unable to set forth facts establishing jurisdiction over the Kinderhook Defendants because such facts simply do not exist.

The Opposition makes clear that Plaintiffs' veil piercing claim is fatally deficient. The pleadings show that the alleged fraudulent transactions identified by Plaintiffs are actually the creation and acquisition of two viable companies whose assets will be available to creditors of the Blitz Debtors through the Bankruptcy proceedings. In addition, Plaintiffs do not allege a single instance where the Kinderhook Defendants have received assets or other benefits from Blitz or the Blitz Debtors. Despite this, and despite the fact that the Kinderhook Defendants are not the proximate cause of the insolvency of the Blitz Debtors, Plaintiffs attempt to make the unprecedented argument that the assets of the Kinderhook Defendants should be made available to them. Such a position is illogical and inequitable.

---

[2] Ignoring well-established pleading rules, Plaintiffs repeatedly cite to "Docket No. 109", a document filed January 17, 2012 as an Exhibit to Plaintiffs' Opposition to Defendant Kinderhook Capital Fund II L.P.'s Motion to Dismiss the First Amended Complaint. [ECF No. 97.] Allegations relying on these documents — documents that neither the First Amended Complaint nor the Second Amended Complaint referred to or incorporated — cannot be considered as a part of the pleadings because "the complaint may not be amended by the briefs in opposition to a motion to dismiss." *World Healthcare Sys., Inc. v. SSI Surgical Servs., Inc.*, No. 1:10-CV-00060, 2011 WL 310183 at *3 (E.D. Tenn. Jan. 28, 2011). Tacitly admitting that the documents included within "Document No. 109" are not properly before this Court, Plaintiffs argue that certain contents of "Document 109" are pleadings from the bankruptcy proceeding (*see, e.g.*, Opp. at 15, notes 23-26), of which this Court may take judicial notice. (*Id.* at 14.) Plaintiffs do not even attempt to argue that the contents of "Document 109" outside the bankruptcy pleadings are appropriately considered on this Motion. Even if the allegations in the Opposition relying on "Document 109" were properly included, such allegations would not suffice to save Plaintiffs' claim.

# ARGUMENT

## I. PLAINTIFFS EFFECTIVELY CONCEDE THEIR INABILITY TO ESTABLISH JURISDICTION BY FAILING TO ADDRESS THE KINDERHOOK DEFENDANTS' ARGUMENT THAT PERSONAL JURISDICTION DOES NOT EXIST IN TENNESSEE

Plaintiffs' Opposition does not even attempt to address the argument made in the Memorandum that the Complaint should be dismissed pursuant to Rule 12(b)(2). By failing to respond to the reasoned argument set forth in the Kinderhook Defendants' Memorandum, Plaintiffs effectively concede their inability to establish the required *prima facie* case. *See Intera Corp. v. Henderson*, 428 F.3d 605, 615 (6th Cir. 2005). Indeed, instead of addressing jurisdiction, Plaintiffs simply request additional discovery.

Plaintiffs have already had two bites at the apple, attempting to establish jurisdiction over the Kinderhook Fund in the First Amended Complaint and over both Kinderhook Defendants in the Second Amended Complaint. Yet both of these pleadings have failed to set forth more than vague and conclusory theories. Plaintiffs would not be aided by additional discovery because facts establishing Plaintiffs' far flung theories do not exist.[3]

## II. PLAINTIFFS' CONCLUSORY VEIL PIERCING ALLEGATIONS DO NOT ESTABLISH THAT THE KINDERHOOK DEFENDANTS ARE ALTER EGOS OF BLITZ, THEREFORE THE KINDERHOOK DEFENDANTS CANNOT BE SUBJECT TO GENERAL JURISDICTION IN TENNESSEE

The veil piercing allegations in the Complaint are not sufficient to show that the Kinderhook Defendants had "complete dominion. . . not only of finances, but of policy and business practice" over any aspect of Blitz or any Blitz Debtors' business such that personal jurisdiction in this Court is appropriate. *Gordon v. Greenview Hosp., Inc.*, 300 S.W.3d 635, 653

---

[3] In fact, Plaintiffs' request for discovery seems to be nothing more than an improper attempt to shore up their insufficient veil piercing claim. It appears that Plaintiffs hope to undertake substantive discovery (under the guise of jurisdictional discovery), allowing them to by-pass Tennessee's requirement that a veil piercing claim be dismissed if it is not pleaded with particularity. *See Se. Tex. Inns, Inc. v. Prime Hospitality Corp.*, 462 F.3d 666, 672 (6th Cir. 2006). This contravention of Tennessee law should not be condoned.

(Tenn. 2009). As discussed in detail below, no matter which transaction Plaintiffs now seek to assert as a basis for the veil piercing claim (or alter ego jurisdiction), the Kinderhook Defendants did not have control "in respect to the transaction under attack."[4] *Id.* Thus, Plaintiffs' allegations are insufficient to overcome the strong "presumption of corporate separateness" under Tennessee law. *Id.* at 651.

Because the Kinderhook Defendants and the Blitz Debtors have "maintain[ed] their status as separate and distinct corporate entities, the presence of one corporation in the forum state cannot be attributed to the other." *Id.* Accordingly, jurisdiction is not proper in this Court.

### III. THE FACE OF THE COMPLAINT FAILS TO PLEAD THE SPECIFIC FACTS NECESSARY TO ESTABLISH A CORPORATE VEIL PIERCING CLAIM, THUS THE COMPLAINT MUST BE DISMISSED

Despite Plaintiffs' improper attempt to rewrite their pleadings yet again through citations in the Opposition (*see* note 2, *supra*), the Opposition makes clear that Plaintiffs cannot meet the requirement under Tennessee law that their veil piercing claim be pled with particularity. *See Se. Tex. Inns, Inc. v. Prime Hospitality Corp.*, 462 F.3d at 672 ("When a cause of action seeks to pierce the corporate veil on the basis of fraud, it is subject to FED. R. CIV. P. 9(b)." (citation omitted)). Accordingly, the claim against the Kinderhook Defendants must be dismissed.

#### A. Plaintiffs Fail To Set Forth Allegations Sufficient To Pierce A Single Veil, Much Less The Four Veils Required To Reach The Kinderhook Fund Or Kinderhook Industries

It is undisputed that the Kinderhook Fund is a shareholder of LAM, and not of Blitz or any of the other Blitz Debtors. (Compl. ¶ 86.) It is also undisputed that, to establish that either

---

[4] Plaintiffs' constantly changing story makes it difficult to ascertain which of the many vague and irrelevant allegations relate to the "transaction under attack" upon which Plaintiffs hope to make their claim. However, the Kinderhook Defendants maintain that the actual reason for any potential injury to Plaintiffs is the alleged faulty design, manufacture, and sale of gas cans, which has led to the onslaught of products liability suits that are the proximate cause of the Blitz Debtors' insolvency. *See In re Blitz U.S.A.*, No. 11-13603(PJW) (Bankr. D. Del.) Compl., Decl. of Rocky Flick dated Nov. 9, 2011 at ¶ 6. As noted in the Memorandum, Plaintiffs have not — and cannot — allege that the Kinderhook Defendants asserted control over this "transaction."

Kinderhook Defendant bears liability for any wrongdoing allegedly committed by Blitz, Plaintiffs must plead sufficient facts to pierce the veils of each company in the chain between Blitz and the Kinderhook Fund — namely Blitz, BAL, BAHI, and LAM. *See Loew v. Gulf Coast Dev., Inc.*, No. 01-A-019010CH00374, 1991 WL 220576, at *4 (Tenn. Ct. App. Nov. 1, 1991) (reversing lower court's decision to pierce the veil where the plaintiffs had not "alleged and proved claims applicable to each corporation separately"). However, Plaintiffs pleadings are woefully deficient, failing to set forth any specific, factual allegations regarding fraudulent conduct by any of these entities. *See Se. Tex. Inns, Inc.*, 462 F.3d at 672.

The allegations in the Complaint demonstrate that Plaintiffs cannot overcome even the initial hurdle of piercing the corporate veil of Blitz to reach its sole shareholder, BAL. Blitz functioned successfully from the time that it was sold in 2007 until the bankruptcy filing more than four years later. (*See* Compl. ¶ 68.) In fact, Blitz, "until its demise, was a legitimate corporation with employees, shareholders, and clients." *See Marshall v. Jackson*, No. M2007-01764-COA-R3-CV, 2008 WL 5156312, at *8 (Tenn. Ct. App. Dec. 8, 2008) (affirming lower court's decision not to pierce the corporate veil). The mere fact that Blitz has now entered bankruptcy is not sufficient to show that the company was undercapitalized or that the company's current insolvency is the result of fraud. *Id.* ("The failure of a previously successful company, which was adequately capitalized at its formation, and the resulting loss of capital is not sufficient to show that the company was grossly undercapitalized."); *see also In re Hillsborough Holdings Corp.*, 176 B.R. 223, 234 (M.D. Fla. 1994) (noting that "inadequate capitalization refers to the amount of capital provided to a subsidiary upon its formation" and "[a] subsidiary which incurs losses subsequent to its incorporation is not considered undercapitalized").

Accordingly, and as set forth further below, Plaintiffs' allegations do not suffice to plead fraud by Blitz or any other entity.

### B. The Veil Piercing Claim Fails Despite Plaintiffs' Attempt To Improperly Rewrite Their Pleadings

Despite Plaintiffs' attempt to rewrite their pleadings through the addition of multiple allegations not properly before the Court, Plaintiffs still fail to meet their burden as to any prong of the three part corporate veil piercing test established by the Tennessee Supreme Court. *Cont'l Bankers Life Ins. Co. of the S. v. Bank of Alamo*, 578 S.W.2d 625, 632 (Tenn. 1979).

*First*, Plaintiffs have failed to set forth facts showing that the Kinderhook Defendants exercised "complete dominion over" LAM — the sole company in which a Defendant is a shareholder — "not only of finances, but of policy and business practice in respect to the transaction under attack, so that the corporate entity, as to that transaction, had no separate mind, will or existence of its own." *See id*. Even assuming *arguendo* that the Complaint had set forth allegations to merit setting aside the corporate forms of each entity between Blitz and the Kinderhook Defendants, the Complaint's allegations of control are conclusory at best, incomprehensible at worst.

As an initial matter, the allegation that the Kinderhook Defendants "actively directed and controlled the daily activities of these subsidiaries and totally dominated them to such an extent they functioned as mere instrumentalities and/or shell companies" (Compl. ¶¶ 78, 87), must be disregarded because it states a conclusion with no supporting facts. *See Pureworks, Inc. v. Brady Corp.*, 3:09-CV-983, 2010 WL 3724229 (M.D. Tenn. Sept. 15, 2010) (Haynes, J.) (disregarding legal conclusions presented as factual allegations and dismissing claim). Setting all such conclusory allegations aside, Plaintiffs claim that three bare allegations — the initial incorporation of the Blitz Debtors by a single law firm, a majority shareholder position in LAM,

and the board memberships of two Kinderhook Industries employees on the boards of the Blitz Debtors (Opp. at 9-10) — is sufficient to demonstrate control by the Kinderhook Defendants "not only of finances, but of policy and business practice" such that the Blitz Debtors "had no separate mind, will or existence of [their] own." *Cont'l Bankers Life Ins. Co. of the S.*, 578 S.W.2d at 632. That is absurd.

*Second*, the veil-piercing claim fails because the transactions that Plaintiffs now identify as those undertaken by Defendants with "intent to defraud creditors" (Opp. at 10) — specifically, creating a corporate structure to limit liability and two transactions undertaken for legitimate business reasons — do not show that any fraud or wrong has been committed. *See Continental Bankers Life Ins. Co. of the S.*, 578 S.W.2d at 632 (there is no veil piercing claim where plaintiffs fail to allege that control has been used to commit a fraud or wrong).

It is well-established that Plaintiffs' conclusory allegations, which accuse the Kinderhook Defendants of forming the corporate structure of the Blitz Debtors to limit liability, are "not tantamount to the fraud or injustice required to pierce the corporate veil." *Se. Tex. Inns, Inc.*, 462 F.3d at 676-77 & 679. It is both legitimate and common to create a subsidiary structure, including the formation of holding companies. *See id.* at 675 (noting that under Tennessee law "there is a presumption of corporate regularity"). Plaintiffs have stated no factual basis for their allegation that BAL, BAHI, and LAM are merely "shell companies" (*see, e.g.,* Compl. ¶¶ 78, 87), nor have they pleaded any facts "of sufficient specificity to satisfy Rule 9(b) because they do not allege the time, place, and content of the fraudulent conduct." *See Cricket Commc'ns, Inc. v. Eleiwa & Sons, Inc.*, 2:08-CV-02541 P, 2009 WL 3784596, at *3 (W.D. Tenn. Nov. 10, 2009). Plaintiffs' allegations regarding the incorporation of the Blitz Debtors does not satisfy the

Rule 9(b) requirement, as they do not support the alleged "intent to defraud" (Opp. at 10), and merely show that each company was properly formed.

Further, the allegations regarding the two transactions identified by Plaintiffs as part of the Kinderhook Defendants' alleged fraudulent plot do not stand up under the scrutiny of either law or logic. As the Complaint makes clear, the transactions involving the two companies allegedly created by the Kinderhook Defendants did not deplete Blitz's assets, nor did they transfer any value whatsoever to the Kinderhook Defendants.[5]

It is illogical to contend, as Plaintiffs do, that the transfer of assets from Blitz to a wholly-owned subsidiary was a play by the Kinderhook Defendants to defraud Blitz's creditors, as those assets remain under Blitz's sole control. Plaintiffs concede that F3 Brands, LLC ("F3"), which was allegedly "spun-off" from Blitz, remains a wholly owned subsidiary of Blitz itself. (Compl. at ¶ 85.) Plaintiffs do not allege that F3 is insolvent, nor is F3 under bankruptcy protection as part of the Blitz Debtors' Bankruptcy proceeding. [ECF No. 91.] Thus, Plaintiffs' own allegations demonstrate that the "spin-off" of F3 was made with due consideration to Blitz and not "with intent to defraud creditors." *Cf. Marshall*, 2008 WL 5156312, at *7 (affirming trial court's decision to pierce the corporate veil of subsidiary where bankrupt subsidiary had transferred significant assets to parent "for no consideration").

With respect to the second transaction, the Complaint simply alleges that the Kinderhook Defendants assisted the Blitz Debtors in the acquisition of a viable related company. There is

---

[5] Notably, Plaintiffs do not allege that the Kinderhook Defendants have themselves received any benefit through their relationship to the Blitz Debtors, either through the Kinderhook Fund's relationship as a shareholder of LAM or through the two allegedly improper transactions. Although it is abundantly clear that these allegedly fraudulent transactions were simply business decisions made by the Blitz Debtors, it would stretch veil piercing doctrine beyond its narrow bounds to hold the Kinderhook Defendants liable when they are not alleged to have received any benefit from the corporations whose veils Plaintiffs seek to pierce. *Pamperin v. Streamline Mfg., Inc.*, 276 S.W.3d 428, 439-40 (Tenn. Ct. App. 2008) (piercing veil with respect to shareholder where it was "clear that many of the assets that were distributed to [the shareholder] were used for his own personal benefit, to the detriment of [the corporation] and its creditors").

nothing in the Complaint to suggest that such a transaction is fraudulent. Plaintiffs contend that the vague and convoluted allegation that "the Kinderhook Defendants used the assets of the Blitz subsidiary companies as collateral on several large loans" to acquire Reliance Products, L.P. ("Reliance"), (Compl. ¶ 82), is sufficient to show that the Kinderhook Defendants used their alleged "dominion and control to deplete Blitz U.S.A., Inc. of its assets." (Opp. at 9.)[6] However, even if the use of a subsidiary's assets as collateral to purchase a viable related company could be seen as a credible allegation of fraudulently depleting assets, Plaintiffs allegations would still fail. As an initial matter, the allegations regarding the purchase of Reliance, including that the assets of unspecified "Blitz subsidiary companies" were used as collateral on the loans (Compl. ¶ 82), are "not of sufficient specificity to satisfy Rule 9(b) because they do not allege the time, place, and content of the fraudulent conduct."[7] *See Cricket Commc'ns, Inc.*, 2009 WL 3784596, at *3 (dismissing claim for piercing the corporate veil). Furthermore, Plaintiffs allege that Reliance Products Holdings, Inc. ("RPHI"), the holding company owning all stock of Reliance, is owned — not by the Kinderhook Defendants — but by BAHI, one of the Blitz Debtors. (Compl. ¶ 81-82.) The Complaint does not allege that Reliance is insolvent or an otherwise improper investment,[8] nor does it allege that Blitz's assets were used as collateral on the investment, only those of unspecified "Blitz subsidiary companies." (*Id.* ¶

---

[6] As previously discussed, the allegations improperly included in the Opposition regarding, *inter alia*, Reliance may not be considered on this Motion. *See World Healthcare Sys., Inc.*, 2011 WL 310183 at *3. However, even if they were properly included, such allegations do not show any fraud or wrongdoing.

[7] The Opposition attempts to clarify — with another improperly pled allegation — that Blitz's assets were used as collateral for the loan. (Opp. at 5.) Even if this allegation were properly considered, it would be insufficient to state a claim because, as discussed above, entering into the collateral agreement did not actually deplete Blitz's assets and because the transaction was not the proximate cause of Plaintiffs' alleged inability to recover from Blitz.

[8] In fact, one of the allegations improperly alleged in the Opposition states that the Blitz Debtors "are now trying to sell Reliance" through the bankruptcy proceedings. (Opp. at 6.) This demonstrates that Reliance is a viable company.

82.) Accordingly, it is illogical to conclude that the allegations regarding Reliance demonstrate a fraudulent depletion of Blitz's assets.

*Third*, it is false to suggest that these transactions — transferring certain assets to a wholly-owned subsidiary and financing the purchase of a related company — caused the insolvency of the Blitz Debtors. The allegations regarding the Kinderhook Defendants' control of the Blitz Debtors do not show that the Kinderhook Defendants proximately caused any unjust loss to Plaintiffs. *See Cont'l Bankers Life Ins. Co. of the S.*, 578 S.W.2d at 632. Instead, the same bankruptcy materials cited by Plaintiffs (Opp. at 14), contradict Plaintiffs' core allegations regarding the cause of the Blitz bankruptcy.

## CONCLUSION

In view of the foregoing, the Kinderhook Defendants respectfully submit that Plaintiffs' claim against them should be dismissed pursuant to Rules 12(b)(2) and 12(b)(6) of the Federal Rules of Civil Procedure. If the Court determines that the claim should not be dismissed, it should be transferred pursuant to 28 U.S.C. § 1412 and 28 U.S.C. § 1404, as pleaded in the Kinderhook Fund's prior motion, currently pending before this Court.

Dated: February 22, 2012

        **BASS, BERRY & SIMS PLC**

        */s/* Wendy M. Warren
        Wallace W. Dietz (#009949)
        Wendy M. Warren (#021880)
        150 Third Avenue South, Suite 2800
        Nashville, TN  37201
        Telephone:  (615) 742-6200
        Facsimile:   (615) 742-0417

**FRESHFIELDS BRUCKHAUS DERINGER US LLP**
Timothy P. Harkness (admitted Pro Hac Vice)
Pamila Gudkov (admitted Pro Hac Vice)
601 Lexington Avenue
New York, NY 10022
Telephone: (212) 277-4000
Facsimile: (212) 277-4001

*Attorneys for Defendants*
*Kinderhook Capital Fund II, L.P. and*
*Kinderhook Industries, LLC*

## CERTIFICATE OF SERVICE

    I do hereby certify I electronically filed the foregoing with the Clerk of the Court by using the CM/ECF system on this 22nd day of February, 2012, which will send a notice of electronic filing to the following:

    Hank Anderson, Esq.
    Anderson Law Firm
    4245 Kemp Blvd.
    Suite 810
    Wichita Falls, TX 76308

    Daniel L. Clayton, Esq.
    Randall L. Kinnard, Esq.
    Kinnard, Clayton & Beveridge
    127 Woodmont Boulevard
    Nashville, TN 37201

    *Attorneys for Plaintiffs*

                              /s/ Wendy M. Warren
                              Wendy M. Warren